542 So.2d 577 (1989)
STATE of Louisiana In the Interest of Juaniski Flanda WILKERSON (Three Cases).
Nos. 88 KJ 1023-88 KJ 1025.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
*578 Wiley Dial, Baton Rouge, for plaintiff-appellee State of La.
Donald Johnson, Baton Rouge, for defendant-appellant Juaniski F. Wilkerson.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
Juaniski Flanda Wilkerson was alleged to be delinquent in petition number 56139 (KJ 88 1023) in count one based on the commission of aggravated battery, a violation of La.R.S. 14:34, and in count two based on the commission of simple battery, a violation of La.R.S. 14:35, and in petition number 56150 (KJ 88 1024) based on the commission of theft of property valued at less than one hundred dollars, a violation of La.R.S. 14:67. On February 8, 1984, the juvenile and his counsel appeared before the East Baton Rouge Parish Family Court (hereinafter referred to as the juvenile court) and the juvenile withdrew his initial denials of the allegations of the petitions and admitted the truthfulness thereof. The juvenile court accepted the admissions and adjudicated the juvenile delinquent on the basis of the admissions. At the disposition hearing held on March 14, 1984, the juvenile court rendered a judgment of disposition ordering the juvenile's commitment to the Louisiana Department of Corrections for a term of three years. However, the court suspended the commitment and placed the juvenile on supervised probation until the juvenile attained the age of seventeen, subject to certain conditions.
*579 Thereafter, the juvenile was charged by petition number 60270 (KJ 88 1025) with theft of property valued at less than one hundred dollars, a violation of La.R.S. 14:67. At an adjudication hearing held on January 27, 1988, the juvenile was adjudged to be a delinquent on the basis of the charged offense. The state then filed a petition to modify the suspended judgment of disposition previously imposed in regard to petitions numbers 56139 and 56150. The petition requested that the juvenile court revoke the juvenile's probation and order that the juvenile be committed to the Department of Public Safety and Corrections for three years. At a disposition hearing held on February 24, 1988, the juvenile admitted to the factual allegations of the petition to modify the suspended disposition. The juvenile court revoked the suspended three year commitment and ordered that the entire three year term of the commitment be executed. Additionally, in regard to the juvenile's adjudication of delinquency in petition number 60270, the court imposed a disposition for a term of six months in the custody of the Department of Public Safety and Corrections. The juvenile court initially ordered that the dispositions be served concurrently. However, the record reflects that, as the disposition hearing was about to conclude, a scuffle occurred in court between the juvenile and his probation officer.[1] Thereafter, the court amended its judgment of disposition by ordering that the three year commitment and the six month commitment run consecutively. The court also found the juvenile in contempt of court for attacking the probation officer and imposed a sentence of thirty days in parish prison for the contempt. On the following day, as per the pertinent minute entry, the court imposed an additional sentence of thirty days in parish prison for disrupting the court during the disposition hearing.
On appeal, the juvenile briefed four assignments of error:
1. The juvenile court erred in finding that a theft occurred in regard to the charge contained in petition number 60270.
2. The juvenile court erred by amending the judgment of disposition to provide that the three year term of commitment and the six month commitment be served consecutively.
3. The juvenile court erred by sentencing the juvenile for contempt of court without affording him an opportunity to be heard.
4. The juvenile court erred in revoking the juvenile's suspended disposition in petition numbers 56139 and 56150 without giving him credit for the time he had served while on probation.
Because we find patent error requiring reversal of the adjudications and the disposition imposed in reference to petition numbers 56139 and 56150, we pretermit discussion of assignments two and four.
The factual background relative to the charges contained in petition numbers 56139 and 56150 were disclosed during the court proceedings at which the juvenile admitted the truthfulness of the charges. In regard to petition number 56139, charging the juvenile with the aggravated battery of Andrea Knighten and simple battery of Angela Phillips, the juvenile initiated a fight with Angela. During the fight, Andrea tried to assist Angela; and the juvenile picked up a bottle and used it to strike Andrea's head. In regard to the theft charged in petition number 56150, the juvenile stole a portable recorder belonging to a Montgomery Ward Store.
Factual background relating to the June 21, 1987, theft charged in petition number 60270 is revealed by the testimony of Chester Lee Kador. On the date in question, Kador was working as general manager of a retail department store in Baker, Louisiana. While in the store talking to a customer in the accessories department, Kador noticed three young, black males (one of whom was the juvenile) walking into the store. They went directly to the shoe department which is adjacent to the accessories *580 department. Kador's conversation with the customer was interrupted when he observed that the juvenile's "mid section" was protruding as if he had a box or something concealed under his clothes. At the time the juvenile and his companions walked into the store, Kador observed that the juvenile's clothes were not protruding and that neither the juvenile nor his companions were carrying anything in their hands. Upon noticing the bulge in the juvenile's clothes, Kador yelled across the store, telling the juvenile and his companions to "wait a minute." The three of them began to run toward the front door of the store. The two companions exited the front door. However, Kador succeeded in detaining the juvenile at the front door. The two companions reentered the store. At that point, all three youths wanted to exit the store; but Kador announced that he wanted his merchandise. The juvenile asked Kador what he was talking about. Kador told the juvenile that it was the merchandise he had under his clothes. The juvenile denied he had any merchandise under his clothes. Kador yelled to one of his clerks to call the police and locked the front door of the store. The juvenile then picked up a trash can and threatened to throw it through the window of the store if Kador did not open the door. Kador told the juvenile that the police were on their way to the store and that if he broke the window he would be arrested for breaking it. The juvenile then walked toward the shoe department, pulled a pair of Puma tennis shoes priced at $19.99 from beneath his clothes, and said, "Here are your tennis shoes, now let me out of the store." At that juncture, the police were arriving. Kador opened the door. The police came inside the store; and the juvenile murmured several times: "[Y]ou got your tennis shoes, now let me go."
On the other hand, the juvenile's testimony related a very different version of the facts. According to the juvenile's version, he went to the store with Wilford Franklin and James Bell. Upon entering the business, they went directly to the shoe department. While they were trying on shoes, Kador locked the door. They continued trying on shoes. When they tried to leave the store, they found the door was locked. They asked Kador to open it. Kador told them to wait until the police came. When the police came, his companions left the premises. The juvenile specifically denied that he had the tennis shoes under his shirt, that anyone ran or attempted to run out of the store, that Kador recovered the shoes from his person and that he had taken or had attempted to take any tennis shoes from the store.

PATENT ERRORS
Initially, we focus our attention on errors patent which we have discovered in regard to the charges contained in petition number 56139 (KJ 88 1023) and petition number 56150 (KJ 88 1024). These patent errors require us to vacate the juvenile's admissions to the charges in petition numbers 56139 and 56150 and to reverse the juvenile court's adjudications of delinquency and the disposition imposed by the juvenile court (as modified) in regard to those charges.
At the February 8, 1984, proceeding when the juvenile admitted the truthfulness of the allegations in petition numbers 56139 and 56150, the juvenile court questioned the juvenile on the following topics: whether or not he had been promised anything to convince him to admit the allegations; whether or not anyone had told him what disposition would be imposed; and whether or not anyone had frightened him, threatened him or done anything to secure the admissions to the allegations. Thereafter, the juvenile court inquired as to the factual bases for the allegations in the petitions before accepting the juvenile's admissions and adjudicating the juvenile delinquent.
However, the juvenile court did not advise the juvenile of his right to an adjudication hearing, his right to confront his accusers, and of his privilege against self-incrimination or make any inquiry as to his understanding of these rights and that by admitting the allegations he was waiving them. The admissions of the juvenile and *581 the proceedings, therefore, do not disclose that the juvenile waived these constitutional rights. Accordingly, the due process requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) require that the admissions be vacated, the adjudications and disposition be reversed, and the juvenile be permitted to answer petition numbers 56139 and 56150 anew. See In re State in Interest of McGinnis, 244 So.2d 336 (La.App. 4th Cir. 1971). See also State v. Godejohn, 425 So.2d 750 (La.1983), in regard to the authority of an appellate court to recognize such a patent error in a criminal proceeding. Numerous courts in other states have similarly concluded that the requirements of Boykin are applicable to juveniles in delinquency proceedings. Cf. J.N. v. State, 483 So.2d 885 (Fla. 3rd DCA 1986); In re John D., 479 A.2d 1173 (R.I.1984) and Matter of Appeal in Maricopa County Juvenile Action No. J-86715, 594 P.2d 554 (Ariz.App. Div. 1, Dept. A 1979). Moreover, the record fails to reveal that the juvenile was advised of his rights in accordance with C.J.P. art. 54 at the time he made his initial (December 14, 1983) appearance to answer the allegations of the petitions and denials of the allegations.
ASSIGNMENT OF ERROR NUMBER ONE:
By means of this assignment, the juvenile asserts that there was insufficient evidence to prove theft of the tennis shoes (property valued at less than one hundred dollars) charged in petition number 60270. The juvenile argues that there was no evidence that the shoes were stolen. In support thereof, he notes that the state did not introduce the shoes into evidence; and he argues that Chester Lee Kador's testimony is not sufficient evidence to prove theft of the shoes. Additionally, the juvenile claims that, if he did have the shoes on his person, there was no theft because he never left the premises of the store with the shoes.
In an adjudication proceeding, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. C.J.P. art. 73. A delinquent act includes the violation of the statutes or ordinances of this state. La.C.J.P. art. 13(7). The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. State in Interest of Pigott, 413 So.2d 659, 661 (La.App. 1st Cir.1982). When reviewing the sufficiency of the evidence to support a juvenile adjudication, an appellate court is limited to a determination of whether or not, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found, from the evidence adduced, proof of guilt beyond a reasonable doubt. See State in Interest of Giangrosso, 395 So.2d 709, 714 (La.1981). However, appellate review in juvenile matters extends to both law and facts. La. Const. Art. V, § 10(B).
La.R.S. 14:67 defines theft as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Initially, we note that the testimony of the victim alone is sufficient to prove the elements of an offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). In finding that the juvenile committed theft of property valued at less than one hundred dollars, it is obvious that the juvenile court believed the victim's testimony.
In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. State in Interest of Racine, 433 So.2d 243, 245 (La.App. 1st Cir.), writ denied, 440 So.2d 151 (La.1983). Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review. Id. at 244-245.
The victim's testimony established that he observed the juvenile and his companions *582 enter the store. When the victim noticed a bulge in the juvenile's clothes, he yelled to them to wait. The juvenile and his companions began to run toward the front door. The victim stopped the juvenile's exit and told him he wanted his merchandise. When the juvenile denied he had the victim's property, the victim summoned the police and locked the front door. Shortly before the police came to the store, the juvenile removed a pair of tennis shoes from beneath his clothing and said: "[H]ere are your shoes, now let me out of the store." The police were admitted to the store; and the juvenile then murmured: "[Y]ou got your tennis shoes, now let me go." Notwithstanding that the juvenile did not exit the store with the shoes, the juvenile's actions (which included the concealment of the shoes under his clothing) clearly constituted an "exercise of wrongful dominion" or "unauthorized control" of the object of the theft, satisfying the theft requirement of "misappropriation or taking." State v. Brown, 481 So.2d 665, 667 (La.App. 1st Cir.1985), writ denied, 488 So.2d 198 (La.1986).
Viewing the evidence in the light most favorable to the state, we conclude that the juvenile court could have found beyond a reasonable doubt that the juvenile committed theft. Therefore, the juvenile's adjudication as a delinquent will not be disturbed.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE:
By means of this assignment, the juvenile claims that the juvenile court erred by sentencing him for contempt of court without affording him an opportunity to be heard orally by way of defense or mitigation, as required by La.C.C.P. art. 223.
The February 24, 1988, minute entry recites that the juvenile court found the juvenile in contempt of court and sentenced him to serve a term of thirty days in parish prison for attacking his probation officer during the February 24 disposition hearing; and the minute entry of the following day recites that, after reviewing the record, the juvenile court sentenced the juvenile to an additional thirty days for disrupting the court. However, neither the minutes of the juvenile court proceedings nor the actual transcript of the February 24, 1988, disposition hearing show that the juvenile court afforded the juvenile an opportunity to be heard orally by way of defense or mitigation.
La.C.J.P. art. 20 requires that the contempt proceedings be conducted in accordance with the provisions of La.C.C.P. arts. 221-227. Although the scuffle and resultant disruption of the juvenile court which took place at the disposition hearing constituted a direct contempt of the court for which the juvenile could be found guilty and punished by the court forthwith without any trial, the court was required to afford the juvenile an opportunity to be heard orally by way of defense or mitigation. La.C.C.P. art. 223. Because the juvenile was not afforded such an opportunity, we reverse his conviction of contempt and sentence of sixty days and remand for compliance with La.C.C.P. art. 223.

DECREE
WE AFFIRM THE ADJUDICATION AND DISPOSITION IN PETITION NO. 60270. WE REVERSE THE ADJUDICATIONS AND DISPOSITION, AS MODIFIED, IN PETITION NOS. 56139 AND 56150 AND REMAND FOR FURTHER PROCEEDINGS. WE REVERSE THE CONVICTION AND SENTENCE FOR CONTEMPT OF COURT AND REMAND FOR COMPLIANCE WITH LA.C.C.P. ART. 223.
NOTES
[1] The record reveals that, at the time of the scuffle, the juvenile had attained seventeen years of age. Hence, he could be found guilty of and punished for contempt of court as an adult. See LSA-C.J.P. art. 13(9) which defines "child."