592 So.2d 435 (1991)
STATE of Louisiana in the Interest of the minor, J.L., Jr.
No. 91-KA-558.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1991.
Rehearing Denied February 14, 1992.
*436 Denis Ganucheau and Terry M. Boudreaux, Asst. Dist. Attys., 24th Judicial Dist., Parish of Jefferson, Gretna, for plaintiff/appellee.
John D. Rawls, Staff Appellant Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for defendant/appellant.
Before WICKER, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
J.L., Jr. appeals an adjudication of the juvenile court in which he was found delinquent and committed to the Department of Public Safety and Corrections for a period of three years. We affirm.
On March 12, 1991 the state filed a petition alleging that J.L., Jr., a juvenile, committed sexual battery in violation of LSA-R.S. 14:43.1 on F.K., a nine-year-old girl. An adjudication hearing commenced on April 3, 1991, and at its conclusion the juvenile court adjudicated J.L., Jr. delinquent as charged. The juvenile filed a motion for appeal which was denied as premature. At a dispositional hearing on May 9, 1991, the juvenile court committed J.L., Jr. to the Department of Public Safety and Corrections/Louisiana Training Institute for a period of three years. The court ordered placement in the special treatment facility. A motion for appeal was filed on June 21, 1991 and granted that same day.
The facts gleaned from the testimony offered at the adjudication hearing indicate that J.L., Jr., accompanied by his cousin Joshua, went to visit a friend, Frankie, on the afternoon of March 2, 1991. J.L., Jr. had visited Frankie's home on many occasions and knew the family well.
At approximately 3:00 p.m., Frankie's mother left the children alone for 27 minutes while she went to complete the paperwork necessary to transfer title to an automobile she had purchased. When she returned to her home she observed J.L., Jr., Joshua and her nine-year-old daughter, F.K., emerge from the hall. She questioned the children about their activities and they responded that they were doing nothing.
Later that evening F.K. told her mother that, while she was alone in her bedroom earlier that day, J.L., Jr. entered her room, followed by Joshua. J.L., Jr. sat next to *437 her on the bed, put his hand under her underpants and touched her vagina with his finger.
The juvenile alleges four errors in this appeal for our review.
Initially, he asserts that the petition is fatally defective because it fails to set forth the requested adjudication pursuant to LSA-C.J.P. art. 49, and it is untimely.
In support of his argument, the juvenile cites In the Interest of Garcia, 325 So.2d 364 (La.App. 4th Cir.1976). In that case the court found a petition fatally defective under former LSA-R.S. 13:1574(c)(1), a statute which is no longer in effect. The juvenile's reliance on Garcia is misplaced. In Garcia the petition not only failed to contain a statement as required by the statute that the child was "in need of supervision, care, or rehabilitation" but it also failed to allege that the juvenile committed a delinquent act and that he was a delinquent child as defined in the statute. Further it failed to cite the statute or municipal ordinance which the child was alleged to have violated. Unlike the above, the petition in the instant case alleges that the juvenile violated LSA-R.S. 14:43.1 in that he committed a sexual battery. Consequently, we find Garcia distinguishable.
The applicable law now in force is Art. 49 of the Code of Juvenile Procedure which states:
The petition shall conclude with a request that the court adjudicate the child to be delinquent, to be in need of supervision, or to be in need of care. The request for adjudication may be made conjunctively or in the alternative.
The petition in this matter requests "that formal jurisdiction be taken by this Honorable Court and that the Court render such judgments and orders as the Court may deem just, proper and necessary...." Implicit in the petition is a request that the court adjudicate the child to be delinquent. The petition alleges facts which show that the child is a delinquent child in that it alleges that the juvenile committed the criminal offense of sexual battery, a delinquent act.
A delinquent act is an act committed by a person less than seventeen years of age, and designated an offense under the statutes or ordinances of this state. LSA-C.J.P. art. 13(7). A child who has committed a delinquent act is a delinquent child. LSA-C.J.P. art. 13(12). There are no facts alleged in the petition which would suggest that the child was a child in need of "supervision" or "care" as defined by the Code of Juvenile Procedure.
The purpose of a formal petition is to give the juvenile notice and an opportunity to defend. State v. Hillman, 353 So.2d 1356 (La.App. 3rd Cir.1977). The petition in question alleges that, on or about the 2nd day of March, 1991, said child (J.L., Jr.) did violate R.S. 14:43.1, in that he did willfully and unlawfully commit sexual battery." That gives the juvenile adequate notice and an opportunity to defend. We find the petition adequately complies with art. 49.
As to the juvenile's argument regarding the timeliness of the filing of the petition we look to LSA-C.J.P. art. 46 which provides in pertinent part:
A. If a child is continued in custody prior to adjudication:
(1) A petition requesting that the child be adjudicated a delinquent or in need of supervision shall be filed within fortyeight hours of the hearing to determine continued custody;
* * * * * *
B. If no petition is filed within the applicable time period, the child shall be released.
The record indicates the juvenile was taken into custody on March 4, 1991. Custody was continued at a hearing on March 7, 1991. The petition was filed on March 12, 1991. Although we agree the petition was untimely, we do not find this to be reversible error. The juvenile's remedy was a motion for release of custody as permitted by LSA-C.J.P. art. 58. He did not seek release in accordance with the Code of Juvenile Procedure. Once he was adjudicated a delinquent the timeliness of the petition became moot. There is no authority for *438 divesting the court of jurisdiction after the forty-eight hour deadline provided for in art. 46 as the juvenile suggests. This assignment is without merit.
In his second assignment of error the juvenile asserts the trial court erred in failing to enter a judgment of disposition in accordance with LSA-C.J.P. art. 87. We have reviewed the record and found a valid commitment as well as a minute entry signed by the judge contained therein. This assignment is without merit.
By the third assignment of error the juvenile questions the sufficiency of the evidence used to adjudicate him delinquent for violation of LSA-R.S. 14:43.1. Specifically he argues that the required intent was not proven beyond a reasonable doubt. Further he contends the young victim's testimony was not credible.
In a juvenile case, the state has the burden of proving, beyond a reasonable doubt, that the juvenile committed the act of delinquency alleged in the petition. LSA-C.J.P. art. 73. That burden of proof standard is no less strenuous than the proof standard required in a criminal proceeding against an adult. State in Interest of Tatom, 463 So.2d 35 (La.App. 5th Cir.1985). The due process standards announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. State in Interest of T.L., 514 So.2d 217, 219 (La.App. 5th Cir.1987). Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Additionally, appellate review in juvenile delinquency proceedings extends to both law and facts. La. Const. Art. V, § 10(B) (1974); State in Interest of Batiste, 367 So.2d 784 (La. 1979); State in Interest of Wilkerson, 542 So.2d 577 (La.App. 1st Cir.1989).
In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review. State in Interest of Wilkerson, supra.
LSA-R.S. 14:43.1 defines sexual battery, as it pertains to this case, as follows:
Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, ... where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender.
Since the word "intentional" is included in the above definition of sexual battery without a qualifying provision, only general criminal intent is required as an essential element of the crime. LSA-R.S. 14:11. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences to follow his act. LSA-R.S. 14:10. In other words, general criminal intent is shown by the very doing of the acts which have been declared criminal. State v. Holmes, 388 So.2d 722 (La.1980).
At the adjudication hearing the victim's mother testified that on March 2, 1991, J.L., Jr. and his cousin, Joshua, were at her home playing with Frankie, her oldest son. J.L., Jr. and Frankie were friends and J.L., Jr., had visited numerous times. In the afternoon she left J.L., Jr. and Joshua and her children alone for a short period of time while she "ran to the auto titles" in order to purchase a vehicle. When she left the house at 3:00 p.m., the boys were preparing hamburgers in the kitchen. Upon returning approximately twenty-seven minutes later she noticed nothing unusual except that Joshua, J.L., Jr. and then the victim walked down the hall coming from the victim's room. In response to her questioning, *439 they indicated that they were doing nothing.
Later that evening at approximately 7:30, the victim told her mother that she needed to talk to her. The victim then related that "... she was in her bedroom playing and J.L. came in and her and J.L. started wrestling and J.L. had her on the [her] bed and he put one hand on her side and one hand on her leg and then he put his hand underneath her panties and touched the tip of her vagina" and that Joshua was in her room during the incident. Upon speaking to J.L., Jr. about the offense he denied it.
The nine-year-old victim, after being found competent, testified that while her mother was gone she went to her room and closed the door having been punished by her brother, Frankie. While lying on her bed, J.L., Jr. and Joshua entered her room without knocking. J.L., Jr. then sat down next to her and put one hand on her hip and one hand between her "twatty twat", her name for her "private part." She further explained that J.L., Jr. placed his "finger down there" underneath her underwear and touched her body. She didn't relate the incident to her mother until J.L., Jr. and Joshua left at 7:00. She further testified that she did not want J.L., Jr. to touch her nor did she consent to the touching.
Joshua, an eleven-year-old boy, testified that he followed J.L., Jr. into the victim's bedroom in order to see what J.L., Jr. would tell her about a facts of life book. He stated that J.L., Jr. walked into the bedroom with the book and instructed her not to look at the book because she was too young. She then "kneed him in the private and they started play wrestling." He denied seeing J.L., Jr. put his hand on the victim's leg and he described the victim as "aggravating" and a "tomboy" who tried to kick him in his "private." He further stated that once the victim went into the bathroom with Bobby, J.L., Jr.'s younger brother.
J.L., Jr. testified that he had never touched the victim in her private area. On that day the victim was wrestling with Joshua in Frankie's room. While wrestling she was trying to hit Joshua in his "private." He then began wrestling with her and she grabbed his penis and jerked it. After he pushed her away she told him that she knew everything in the [facts of life] book and she went into her room. With the book in his possession, he entered her room followed by Joshua. In order to show her that she did not know everything, he "flipped to the page to the vagina" and asked her to identify it; however, she was unable to do so. The boys then left the room when Frankie opened the door.
He further testified that at the time of the incident he was thirteen years old and he had previously discussed, with her mother, the victim's propensity to grab boys' genitalia.
J.L., Jr.'s mother testified that J.L., Jr. had been institutionalized in DePaul's North Shore in 1986 and in Greenwell Springs Psychiatric in 1990. She stated that he enjoys anal and oral sex with girls fourteen to seventeen, "as long as they are well built and they're large" and she had experienced problems with J.L., Jr. prior to this incident when he molested her other son.
In finding that the juvenile committed sexual battery, the court gave the following reasons:
This Court finds that the State proved all the elements of R.S. 14:43.1 beyond a reasonable doubt. The state proved that the victim was less than fifteen years old, and that the defendant was at least three years older. The nine year old victim testified that the thirteen year old defendant went into her bedroom on the afternoon in question and touched her genitals with his fingers. She reported the incident to her mother as soon as J.L. left the house that evening. J.L. admits only to showing the victim a sexually explicit book and "play fighting" with her.
In a case such as this, the court is called upon to make a decision based upon the testimony of the witnesses and on the evidence. See State In Interest of Wilkerson, 542 So.2d 577 (La.App. 1st Cir.1989). The circumstances surrounding *440 this incident, when combined with the reasonable inferences which may be drawn from the defendant's past sexual behavior, exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
Here, the juvenile court chose to believe the victim's testimony which alone is sufficient to prove the elements of an offense. State In Interest of Wilkerson, supra. Considering that reasonable evaluation of credibility it would be difficult to find error in those findings; therefore, those factual findings should not be disturbed.
Furthermore, viewing the evidence in the light most favorable to the prosecution, it can be concluded that the juvenile court could have found beyond a reasonable doubt that the juvenile committed sexual battery in that the nine-year-old victim testified that the juvenile who was thirteen years old touched her vagina and the touching establishes intent. The fact that the record contains evidence which conflicts with the testimony which was accepted by the court, the trier of fact, does not render the evidence insufficient. State v. Salter, 515 So.2d 609 (La.App. 1st Cir.1987). This assignment lacks merit.
In his final assignment the juvenile asserts the trial court erred in confining the juvenile to a facility allowing only restricted visits by immediate family members.
The juvenile court committed the juvenile to the Department of Public Safety and Corrections on May 5, 1991, for a period of three years. The Department placed the juvenile in the Juvenile Reception and Diagnostic Center located in Baker, Louisiana and subsequently he was transferred from the Center's general population to the treatment unit. The Center restricts visiting to one monthly visit by immediate family.
LSA-C.J.P. art. 86 A provides:
The court should impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
Art. 83A(4)(a) allows the court to, "commit a child adjudicated delinquent, and thirteen years of age or older at the time of the commission of the delinquent act or acts, to the custody of the Department of Public Safety and Corrections."
Upon commitment the Department has sole custody of the juvenile and determines the placement, care, and treatment of the juvenile. LSA-C.J.P. art. 86 G; LSA-R.S. 15:901C(1).
The Department admitted the juvenile to the Juvenile Reception and Diagnostic Center in accordance with the Office of Juvenile Services' recommendation to place the juvenile in a secure environment at the Center. In determining to place the juvenile in the Center, the Department had an extensive case record to consider including numerous psychological/psychiatric evaluations. Consequently, the Department acted within its sound discretion in placing the juvenile in the Center where the restrictive visitation policy was in effect. This assignment is without merit.
For the foregoing reasons the juvenile's adjudication and commitment are affirmed.
AFFIRMED.