# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**13-1207**

**STATE IN THE INTEREST**

**C. V.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC201351
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Michael Harson, District Attorney**
**Michelle M. Breaux, Assistant District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**Jane Hogan**
**Public Defenders Office**
**Fifteenth Judicial District Court**
**600 Jefferson Street, Suite 902**
**Lafayette, LA 70501**
**(337) 232-9345**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **C. V.**

**GREMILLION, Judge.**

C.V., a juvenile, was found in possession of marijuana while at Judice Middle School in Lafayette, Louisiana. The Juvenile was charged by petition with one count of possession of marijuana, a violation of La.R.S. 40:966. The Juvenile entered a denial to the charge on March 13, 2013. On September 4, 2013, the trial court adjudicated him a delinquent for having possessed marijuana. On that same date, the trial court entered the following disposition: "six months suspended and six months active supervised probation." The trial court also ordered a drug screen within twenty-four hours. The Juvenile is now before this court, alleging one assignment of error. We affirm.

## ERRORS PATENT

Although the Louisiana Children's Code is silent on whether a juvenile criminal proceeding is entitled to an errors patent review, this court has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State ex rel. J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. There are several errors patent.

There are two errors in the petition. Louisiana Children's Code Article 845 provides that the petition shall contain the "name, date, and place of birth, sex, race, address, and present location of the child." The petition filed in the present case fails to allege the Juvenile's place of birth. Additionally, the petition mistakenly states that the Juvenile is a female. The Juvenile alleges no prejudice due to the petition's failure to set forth his place of birth and mistakenly stating that he is a female. Accordingly, these defects in the petition are harmless and require no action by this court.

2

The trial court failed to advise the Juvenile of his rights as required by La.Ch.Code art. 855 when he appeared to answer the allegations contained in the petition.

Louisiana Children's Code Article 855 states in pertinent part:

A. When the child appears to answer the petition, the court shall first determine that the child is capable of understanding statements about his rights under this Code.

B. If the child is capable, the court shall then advise the child of the following items in terms understandable to the child:

(1) The nature of this delinquency proceeding.

(2) The nature of the allegations of the petition.

(3) His right to an adjudication hearing.

(4) His right to be represented by an attorney, his right to have counsel appointed as provided in Article 809, and his right in certain circumstances authorized by Article 810 to waive counsel.

(5) His privilege against self-incrimination.

(6) The range of responses authorized under Article 856.

(7) The possible consequences of his admission that the allegations are true, including the maximum and minimal dispositions which the court might impose pursuant to Articles 897 through 900.

The transcript of the proceeding to answer the petition reflects that the Juvenile was arraigned and entered a denial to the charge. The transcript of this proceeding does not indicate that the Juvenile was advised of his rights pursuant to La.Ch.Code art. 855. In *State ex rel. K.G.*, 34,535 (La.App. 2 Cir. 1/24/01), 778 So.2d 716, the trial court failed to advise the juvenile of the enumerated rights in La.Ch.Code art. 855 when he appeared to answer the allegations of the delinquency petition. In determining that the error was harmless, the appellate

3

court noted that the juvenile was represented by counsel and entered a denial of the charge. *See also State ex rel. J.G.*, 94-194 (La.App. 5 Cir. 7/26/94), 641 So.2d 633. In this case, the juvenile entered a denial and was represented by counsel. Additionally, the record indicates that the Juvenile proceeded without objection to the adjudication hearing. *See State ex rel. Z.S.*, 01-1099 (La.App. 5 Cir. 2/26/02), 811 So.2d 1003. Accordingly, the error is harmless and/or waived.

On the face of the record, the adjudication was not commenced within the time period mandated by La.Ch.Code art. 877, which provides:

> A. When the child is charged with a crime of violence as defined in R.S. 14:2(B) and the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within sixty days of the appearance to answer the petition. In all other cases, if the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within thirty days of the appearance to answer the petition.
>
> B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.
>
> C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.
>
> D. For good cause, the court may extend such period.

In *State ex rel. R.D.C., Jr.*, 93-1865 (La. 2/28/94), 632 So.2d 745, 749, the court held: "In sum, we find that La.Ch.Code art. 877 sets out mandatory time limits within which the adjudicatory hearing must be commenced. These limits may only be extended by the court based on a finding of good cause."

In this case, the Juvenile appeared in court to answer the petition on March 13, 2013. The adjudication was held on September 4, 2013, almost six months later. Nothing in the record indicates that the Juvenile was held in continued custody for this misdemeanor offense; thus, the ninety-day period applies. On

4

May 8, 2013, the date of the timely-set initial hearing, the Juvenile's attorney requested and was granted a continuance. The trial court set the adjudication hearing for June 12, 2013, one day after the ninety-day period had elapsed. *See* La.Ch.Code art. 114. The court minutes do not indicate a reason for the continuance. On June 12, 2013, the court minutes indicate that the Juvenile's attorney requested and was granted a continuance. The trial court set the hearing date for September 4, 2013. The ground for the continuance was that new counsel enrolled on behalf of the Juvenile. The Juvenile's attorney requested that the legal delays be waived.

In *State ex rel. K.E.C.*, 10-953 (La.App. 3 Cir. 12/8/10), 54 So.3d 735, and *State ex rel. N.F.*, 13-589 (La.App. 3 Cir. 11/6/13), 124 So.3d 1262, this court recognized untimely adjudication as an error patent.

In *N.F.*, the adjudication was initially timely set. However, because of continuances, the adjudication was held outside of the mandatory periods set forth in Article 877. This court recognized as an error patent that the record indicated the adjudication was untimely held, and it found the error harmless, holding in pertinent part:

> Pursuant to La.Ch.Code art. 877, N.F.'s adjudication hearing should have been set within sixty to ninety days of July 12, 2012, depending on whether he was continued in custody, except for good cause shown. It was initially set for August 9, 2012, which is within the sixty-day time period. The trial court reset the adjudication date to October 4, 2012. In September 2012, the State filed a motion to continue, claiming delays associated with the criminalist report on DNA analysis, a pending investigation request, the need to address N.F.'s motion to suppress, and that N.F. had indicated a need for more time as well. A hearing was held in October 2012, and N.F.'s attorney acknowledged it was a joint motion. The trial court granted the motion, and the matter was set for December 13, 2012. The adjudication commenced on that date. We find that the State proved that good cause was shown for the delay; thus, any error is harmless.

> See *State in the Interest of R.D.C, Jr.*, 93-1865 (La.2/28/94), 632 So.2d 745.

*Id*. at 1266.

In this case, we find the record supports that good cause was shown for the delay: the enrollment of new counsel. Therefore, any error is harmless.

The trial court failed to set forth a written disposition in the record. Louisiana Children's Code Article 903 provides in pertinent part:

> B. The court shall enter into the record a written judgment of disposition specifying all of the following:
>
> > (1) The offense for which the child has been adjudicated a delinquent.
> >
> > (2) The nature of the disposition.
> >
> > (3) The agency, institution, or person to whom the child is assigned.
> >
> > (4) The conditions of probation, if applicable.
> >
> > (5) Any other applicable terms and conditions regarding the disposition.
> >
> > (6) The maximum duration of the disposition and, if committed to the custody of the Department of Public Safety and Corrections, the maximum term of the commitment.
>
> > . . . .
>
> D. An extract of the minutes of court specifying the information required by Paragraph B of this Article and signed by the court shall be considered a written judgment of disposition.

Thus, we order the trial court to file a written disposition into the record in accordance with La.Ch.Code art. 903.

The record before us does not indicate that the trial court gave the Juvenile credit for time spent in secure detention, if any, prior to the imposition of disposition, as required by La.Ch.Code art. 900. *State ex rel. J.F.*, 03-321

(La.App. 3 Cir. 8/6/03), 851 So.2d 1282. Accordingly, we amend the Juvenile's disposition to give him credit for time served in a secure detention facility before the imposition of disposition, if any, and instruct the trial court to note the amendment in the written disposition and in the minute entry. *State ex rel. M.M.,* 06-607 (La.App. 3 Cir. 11/2/06), 941 So.2d 716.

The trial court failed to inform the Juvenile of the two-year prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Although the Children's Code contains no similar provision, this court has previously held that this notice should be given. *State ex rel. J.C.G.*, 706 So.2d 1081; *State ex rel. J.F.*, 851 So.2d 1282. Accordingly, we order the trial court to inform the Juvenile of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that the Juvenile received the notice in the record of the proceedings.

## ASSIGNMENT OF ERROR

The Juvenile alleges that the trial court erred in adjudicating him a delinquent for possession of marijuana. Specifically, the Juvenile contends that the trial court erred in disallowing him to present evidence of a justification defense under La.R.S. 14:18(6).

Louisiana Revised Statute 14:18(6) allows for the offense of justification in the following circumstance:

> When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed[.]

The person claiming the compulsion defense has the burden of proving the defense by a preponderance of the evidence. *State ex rel. White*, 411 So.2d 537 (La.App. 1 Cir. 1982).

In this case, the Juvenile admitted to possessing the marijuana found on him but contended that he was forced to possess the marijuana by another student. The Juvenile attempted to prove his justification defense through his own testimony and the cross-examinations of Officer Chris Bachelor and Principal Samuel Clay. The Juvenile testified that another student, Dekalin, told him to hold the marijuana until the end of school and threatened to jump the Juvenile if he dumped the marijuana or told anyone about it. Officer Bachelor, the Lafayette Parish Sheriff's Officer assigned to Judice Middle, arrested the Juvenile when the marijuana was found on him.

According to Officer Bachelor, the Juvenile told him that the reason he had the marijuana on him was because another student told him to hold it and threatened to jump him if he got rid of the marijuana or if he told anyone about it. On cross-examination, Officer Bachelor testified that the name of the student who allegedly threatened the Juvenile was Dekalin Perry. When asked if he was aware of any interactions between Dekalin and the Juvenile prior to that day, Officer Bachelor responded, "No, I do not." Officer Bachelor also testified that he did not recall the Juvenile ever coming to him about any interactions between he and Dekalin. When the Juvenile's counsel asked Officer Bachelor if Dekalin had "extensive dealings from a disciplinary standpoint," the State objected, arguing that such information was not relevant. The Juvenile's counsel responded:

> I believe it's relevant to the defense, Your Honor, if he's afraid of being jumped. The propensity for somebody to act violent is relevant and material to whether - -

The trial court responded: "Whether he had possession of marijuana? It's not a self-defense. I sustain the objection." The Juvenile's counsel then asked Officer Bachelor if he ever witnessed the Juvenile being bullied by Dekalin, and Officer Bachelor responded, "No, sir, I haven't."

The school's principal, Samuel Clay, also testified that the Juvenile said he was threatened by Dekalin to keep the marijuana until the end of the day or be jumped. During the cross-examination of Principal Clay, the Juvenile's counsel asked the principal if he was familiar with Dekalin Perry. The State objected to the question, and the following colloquy took place:

> THE COURT: I'm going to give him some latitude with regards to that question - -
>
> MS. BREAUX: Okay.
>
> THE COURT: - - based on what maybe - -

A: We usually don't discuss other students with that student present. We sometimes discuss with adults, but we usually don't discuss other students with that student present.

> THE COURT: You are now in a court of law. You don't have a choice.

A: Okay.

> THE COURT: And actually, what I want to know with regards to him - - and you are absolutely correct, he has a privacy issue. The only thing I want to know with him is if you know of any issues that that person had with the defendant here. That's the only thing you can answer to that. That's it, because there is a privacy issue. This is a juvenile, and whether or not he had an issue - -
>
> MR. SCANDRETT: Note my objection for the record, Your Honor.
>
> THE COURT: Yes. Okay. Were you ever notified of an issue between this defendant and the gentlemen who was named?

9

MR. SCANDRETT: And note my objection for my inability to ask my questions and put on my evidence.

THE COURT: With regards to that juvenile and his privacy issues at Judice Middle, yes, I would sustain that objection. Okay. But having said that, this defendant has a right to have a response to the question. Between this defendant and the person named, are you aware of any dealings with them?

A: No. [The Juvenile] did state that name that you mentioned, Dekalin Perry, gave him marijuana and wanted it back from him at the end of the day or would jump him.

Q: Had you had any previous incidents that - - in which concern was raised by [the Juvenile] for safety at the hands of Dekalin Perry?

A: No, sir. The first time I ever heard was that day.

Q: [The Juvenile] had never reported that to you before?

A: As I said, no, sir.

Q: And you are unaware of anyone else ever raising that issue?

A: Anyone is broad. Nobody else has mentioned [the Juvenile's] issue with Dekalin to me except [the Juvenile] on that day.

Q: No one, including [the Juvenile], prior to December 21st 2012, had cited Dekalin for bullying or indicated that Dekalin had bullied [the Juvenile]?

A: He's crossing over into my field - -

THE COURT: No, no. He's asking if - -

MR. SCANDRETT: But, Your Honor - -

THE COURT: But you asked an answer, and now you've changed it to bullying, I think. You asked if anybody had brought this gentleman's name with regards to your client. Is that what you're asking?

MR. SCANDRETT: I'd asked that if there were any disciplinary actions involving both [the Juvenile] and Dekalin; additionally, specific to the type of disciplinary actions, were there any reports that Dekalin had been bullying [the Juvenile].

THE COURT: Okay. Well, I think he said he never received a response by [the Juvenile] about this gentleman.

MR. SCANDRETT: No further questions for this witness.

During the Juvenile's testimony, he testified that on the day in question, Dekalin pulled him aside and told him to hold the marijuana until the end of school. According to the Juvenile, Dekalin threatened to jump him if he dumped the marijuana or told anyone about it. When asked if he felt Dekalin was capable of jumping him, the Juvenile responded, "Yes, sir." The Juvenile further testified that a few weeks before, Dekalin wanted to fight him at recess. When asked if Dekalin threatened him at any other time, the Juvenile responded, "No, sir." The Juvenile did not report these alleged incidents to the principal but did tell his teacher, who committed to handling the problem after recess. The Juvenile did not report the incidents to anyone else. The following colloquy then took place regarding the Juvenile's belief that Dekalin could hurt him:

Q: Okay. Did you feel that Dekalin was capable of seriously hurting you?

A: Yes, sir.

MS. BREAUX: Judge, I'm going to object. That's speculation.

Q: Did you feel that Dekalin was capable of carrying out the threat?

MS. BREAUX: Again, speculation.

THE COURT: You are. You are asking him to speculate whether it could have happened or not.

Q: Did you witness Dekalin harm anybody else in the past?

A: No, sir.

Q: No? Did Dekalin ever harm you in the past?

11

A: He'd like hit me on the shoulder and mess around with me. He thought it was funny, but it actually kind of hurt.

Q: Were you in fear for your safety based on the threat Dekalin make to you?

A: Yes, sir.

Q: And why is that?

A: Because he had his friends with him when he gave it to me; and he was like, don't dump it. And I was scared. I didn't know what to do. That was in the morning. And I was thinking about dumping it, and I was going to dump it. And then I seen him again, and he was like, don't dump it, don't tell anybody. And I was like - - I just held it. Stupid idea. I made a mistake. And I was scared, I didn't want to - -

Q: You were scared that if you did dump it or you did tell somebody that he was going to harm you?

A: Yes, sir.

Q: And what kind of harm did you think he was going to - -

A: He was going to beat me until I was like - -

After the final question and answer, the State objected based on speculation. The Juvenile's counsel responded that the question and answer were relative to his justification defense. The trial court sustained the objection, stating that the Juvenile had already testified that he was fearful and that the Juvenile's belief that he would be beaten was speculation. The Juvenile's counsel objected to not being able to ask reasonable questions, which prompted a threat by the trial court to find the Juvenile's counsel in contempt of court.

On cross-examination, the State asked the Juvenile why he did not alert a teacher, the principal, or some other person as to the marijuana. The Juvenile responded, "Because I was scared that they wouldn't believe me, and I would get arrested for it, and I would get into trouble for it and not him."

After hearing the above testimony, the trial court rejected the Juvenile's justification defense and found him delinquent for possessing:

> Everybody, whoever had possession of whatever could then have that story. I'm not suggesting your client's story is not true, but has he proven it to me to overcome the burden that I think has been set forth with possession of marijuana? I don't think he has. And with that, the Court would find him guilty of possession of marijuana.

In brief, the Juvenile's counsel contends that he was prevented from eliciting testimony from the Juvenile and other witnesses regarding his justification defense. However, the Juvenile's counsel was able to elicit testimony from the Juvenile as to his fear of Dekalin, Dekalin's previous attempt to fight him, and his belief that Dekalin was capable of seriously hurting him. The only information the Juvenile's counsel was prevented from eliciting from the Juvenile was his speculative belief as to the type of harm Dekalin would do to him.

Also in brief, the Juvenile's counsel contends that the trial court erred in disallowing questions regarding Dekalin's disciplinary history. Although the Juvenile's counsel was able to ask questions about the specific history between the Juvenile and Dekalin, the trial court prevented the Juvenile's counsel from asking questions regarding Dekalin's general disciplinary history in order to protect Dekalin's privacy. In brief, the State argues that La.Code Evid. Art. 404 would have prevented the admissibility of Dekalin's disciplinary history had Dekalin testified at trial. Thus, the State argues, the evidence is certainly inadmissible since Dekalin did not testify.

First, we note that the Juvenile has waived his right to challenge the exclusion of evidence by failing to proffer the evidence. In *State v. Magee*, 11-574, pp. 60-61 (La. 9/28/12), 103 So.3d 285, 326, *cert. denied*, __ U.S. __, 134

13

S.Ct. 56 (2013) (citation omitted) (alteration in original), the supreme court stated the following regarding the failure to proffer evidence:

> Louisiana's Code of Evidence provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [w]hen the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel." La. C.E. art. 103(A)(2). Thus, in order to preserve for review an alleged error in a ruling excluding evidence, counsel must make known to the court the substance of the excluded testimony. This can be effected by proffer, either in the form of a complete record of the excluded testimony or a statement describing what the party expects to establish by the excluded evidence.

The Juvenile's counsel never gave a statement describing what he expected to establish by the evidence he claims was excluded; thus, he is now precluded from raising this issue on appeal.

Additionally, there is no indication that the trial court abused its discretion in denying the Juvenile's request to ask the questions at issue.

> It is the responsibility of the court to exercise reasonable control over the presentation of the evidence. The trial judge is left with wide discretion as to the admissibility of evidence under pertinent evidence rules. The decision of the trial judge will not be overturned absent a clear abuse of discretion by the trial judge.

*State v. Clay*, 576 So.2d 1099, 1101 (La.App. 3 Cir.), *writ denied*, 580 So.2d 669 (La.1991). When evidence is both probative and prejudicial, "it is the trial court's duty to balance those two competing concepts and make the call regarding admissibility." *State v. Arnold*, 13-218, p. 14 (La.App. 3 Cir. 11/6/13), 124 So.3d 592, 601. Here, the trial court balanced the probative and prejudicial value of the questions asked by the Juvenile's counsel and did not abuse its discretion in deciding what questions to allow and what questions to reject.

Furthermore, even if the excluded evidence should have been admitted, the Juvenile fails to show that there is a reasonable possibility that the exclusion of

such evidence contributed to the his adjudication. As the supreme court stated in *State v. Martin*, 458 So.2d 454, 459 (La.1984), "[c]onsidering the nature of the evidence which was excluded and the evidence which was received in this case, it is clear that the impact of the excluded evidence would have been minimal and that exclusion of the evidence was harmless beyond a reasonable doubt." Likewise, considering the evidence that was excluded in the present case (the Juvenile's speculative belief as to the type of harm Dekalin would cause him and Dekalin's general disciplinary history) and the evidence that was received (the Juvenile's fear of Dekalin, Dekalin's previous attempt to fight the Juvenile, the Juvenile's belief that Dekalin was capable of seriously hurting him, and Dekalin's previous history with the Juvenile), it is clear that the impact of the excluded evidence would have been minimal. Thus, even if error exists, it is harmless.

Additionally, we find that the evidence against the Juvenile was sufficient to warrant the adjudication he received. In *State ex rel. C.P.*, 12-192, p. 4 (La.App. 3 Cir. 6/6/12), 91 So.3d 1273, 1276-77, this court stated the following regarding the standard for reviewing adjudications of delinquency:

> The supreme court discussed sufficiency of the evidence claims in juvenile delinquency proceedings in *State in the Interest of D.P.B.*, 02-1742, pp. 4-6 (La.5/20/03), 846 So.2d 753, 756-57 (footnote omitted) (first alteration in original), stating:
>
>> In a juvenile proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult—to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.Code art. 883; *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution,

was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). . . . . When defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Matthews*, 464 So.2d 298 (La.1985).

Further, the trial court's findings of fact in a juvenile case are subject to the manifest error standard of review. *State in the Interest of J.M.*, 99-136 (La.App. 3 Cir. 6/2/99), 742 So.2d 6 (citing *State in the Interest of Wilkerson*, 542 So.2d 577 (La.App. 1 Cir.1989)). Accordingly, the appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact absent manifest error. *Id.*

In the present case, the Juvenile admitted that he possessed the marijuana. As stated above, the Juvenile claims that he was justified in possessing the marijuana because he was compelled to do so by threat of physical harm. The trial court, however, found the Juvenile did not satisfy his burden of proving this defense. As cited by the State in its brief, the first circuit affirmed a finding of delinquency in *State ex rel. M.P.,* 12-1535 (La.App. 1 Cir. 2/22/13) (an unpublished opinion), where the juvenile offered only self-serving testimony to prove that his crime was justified. In *M.P.*, the court stated:

We agree with the finding of the juvenile court that M.P. did not prove his defense by a preponderance of the evidence. Based on our careful review of the record, the juvenile court's finding that there was proof beyond a reasonable doubt that M.P. had committed the offense of armed robbery was not manifestly erroneous or clearly wrong.

*M.P.*, 12-1535, p. 3.

Likewise, after a careful review of the record in the present case, the trial court's finding of delinquency was not manifestly erroneous or clearly wrong. The only evidence the Juvenile offered in support of his defense was his own self-

serving testimony that he was compelled to hold the marijuana for Dekalin. However, neither the Juvenile, Officer Bachelor, nor Principal Clay could point to any significant previous interactions between the Juvenile and Dekalin. Although the Juvenile's counsel contends that Dekalin was subpoenaed and did not appear, the Juvenile's counsel did not request a continuance based upon Dekalin's failure to appear. Further, the trial court heard the Juvenile's testimony that he was scared of Dekalin and believed that Dekalin could seriously hurt him. Even considering this testimony, the trial court did not believe the Juvenile carried his burden of proof and rejected the Juvenile's justification defense. "A reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury." *State v. Jeanfreau*, 11-1237 (La.App. 1 Cir. 2/10/12) (an unpublished opinion) (citing *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So.3d 417, 418). The trial court's rejection of the Juvenile's defense was rational, and we will not overturn it.

**DECREE**

C.V.'s adjudication is affirmed. However, we order the trial court to:

1. File a written disposition into the record in accordance with La.Ch.Code art. 903;

2. Amend C.V.'s disposition to give him credit for time served in a secure detention facility before the imposition of disposition, if any;

3. Note the amendment in the written disposition and in the minute entry; and

4. Inform C.V. of the provisions of Article 930.8 by sending appropriate written notice to him within ten (10) days of the rendition of this opinion and to file written proof that C.V. received the notice in the record of the proceedings.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**