h KNOLL, Judge.
This appeal concerns a juvenile’s adjudication of delinquency for two counts of sexual battery. J.B. was charged with two counts of sexual battery, violations of LSA-R.S. 14:43.1, involving his two nieces, Diane and June, both minors under the age of ten.[1] On June 22, 1993, an evidentiary hearing was held and the juvenile court judge adjudicated J.B. a delinquent based on the criminal charges brought against him. After conduct *404 ing a predispositional investigation, the juvenile court sentenced J.B. to two years custody with the Department of Youth Services and Corrections, but suspended the sentence and placed him on two years active supervised probation. As part of J.B.’s probation, the juvenile court imposed the following conditions: (1) his driving privileges were suspended for the period of probation; (2) he and his mother were ordered to continue weekly counseling sessions; (3) his counselor was ordered to provide the probation officer with regular status reports of his progress in therapy; (4) he was ordered to remain enrolled in laAcadiana High and his report cards were ordered filed with his probation officer; (5) he was ordered to have no unsupervised contact with the two victims; (6) he was prohibited from possessing a firearm during his probationary period; and (7) he was ordered to pay restitution of $20,000 to the victims, pay their counseling costs for a two year period, and pay a probation/supervision fee of $100 per month.
J.B. has filed this appeal, relying on twenty assignments of error. We note, however, that he has not briefed assignments of error 5, 6, 7, and 19. Accordingly, we consider these various assignments of error abandoned. LSA-Uniform Rules, Courts of Appeal, 2-12.4.[2]
FACTS
Since J.B. has raised an assignment of error specifically related to the sufficiency of evidence, we will sketch the facts at this point and elaborate on them under the sufficiency of evidence issue.
In June of 1992, J.B.’s sister, the victims’ mother, discovered J.B. in the bathroom with one of her daughters. As a result of questioning which followed, the girls told their mother that J.B. had impermissibly touched their vaginas and breasts on various prior occasions. From this disclosure more detailed information was adduced and J.B. was charged with committing sexual battery on Diane between January 1,1990, and January 7, 1992, when she was 5 years of age, and sexual battery , on June between January 1, 1988, and January 7, 1992, when she was 7 years of age. At the time J.B. was adjudicated a delinquent, he was 15 years of age.
IsPRETRIAL MOTIONS FOR PSYCHOLOGICAL EXAMINATION
In his first four assignments of error, J.B. contends that the juvenile court erred in denying him the right to have the two minor victims and their mother psychologically examined. He argues that his inability to obtain this evidence denied him the opportunity to adequately prepare his defense and prohibited him from obtaining exculpatory evidence through the use of this discovery tool.
Defense counsel admits that there is no specific statutory provision which expressly grants a criminal defendant a right to such examinations.
LSA-La.Ch.C. Art. 866 provides that discovery in delinquency proceedings is governed by the provisions of the Louisiana Code of Criminal Procedure. We have reviewed LSA-C.Cr.P. Art. 716 et seq., the criminal discovery articles, and find no support for J.B.’s contention.
Accordingly, we find no merit in these assignments of error.
EVIDENTIARY RULINGS
J.B. next complains about evidentiary rulings regarding the testimony of Dr. John Morelia, his expert psychologist, and Julie *405 Truesdale, a kindergarten teacher who taught one of the victims.
Dr. John Morelia. J.B. contends that the juvenile court erred in sustaining the State’s hearsay objection when he was asked to speculate if there were other motives for the criminal charges brought against him. J.B. argues that under LSA-C.E. Art. 703 an expert’s opinion testimony is admissible “[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.” We disagree.
Initially, we note that, as pointed out by the juvenile court, the victims and their mother were present at trial and were available for cross-examination. We further observe that, in essence, J.B. was attempting to have Dr. Morelia speculate about the truthfulness of the victims and their mother without first having the benefit’ of examining them. Clearly, the juvenile court properly ruled that this line of questioning was inadmissible.
J.B.’ further contends that the juvenile court impermissibly truncated his redirect 14examination of Dr. Morelia on his opinion that J.B. was a “non-perpetrator,” an individual who did not fit the classification of a perpetrator of molestation crimes.
Assuming for purposes of argument that the juvenile court erred in limiting this line of redirected questioning as repetitious, we find no harm shown. The record reflects that the juvenile court heard extensive testimony from Dr. Morelia on direct examination that based on his examination of J.B., he was of the opinion that J.B. did not have any emotional or personality disorder and that his psychological profile was not consistent with characteristics of individuals involved in molestations. Therefore, even if there was error, it was harmless error.
Julie Truesdale. J.B. contends that the juvenile court erred in refusing to allow Julie Truesdale, one of the victim’s kindergarten teachers, to testify as an expert in the field of education, with training in child development. He argues that the juvenile court should have allowed this teacher to testify as an expert in identifying sexually abused children through her observation of conduct and demeanor, and in recognizing handwriting styles of sexually abused children.
LSA-C.E. Art. 702 provides that a witness may be qualified as an expert by knowledge, skill, experience, training, or education. The rulings of a trial court on the qualifications of an expert witness will not be disturbed on appellate review in the absence of a clear showing of abuse. State v. Beridon, 449 So.2d 2 (La.App. 1 Cir.), writ denied, 452 So.2d 178 (La.1984).
Mrs. Truesdale is a kindergarten teacher with a degree in lower elementary education, kindergarten education, and special education. J.B. argued to the juvenile court that solely because Mrs. Truesdale was a teacher, she was qualified as an expert able to identify physically and sexually abused children. We disagree.
The evidence presented was insufficient to extend Mrs. Truesdale’s expertise to consider her qualified as an expert in the identification of sexually abused children. We likewise find no error in not allowing her to be qualified as an expert capable of using handwriting comparisons to identify abused children. There was no showing that she qualified under LSA-C.E. Art. 702 in these areas of expertise.
IsWe find no merit to these evidentiary complaints.
SUFFICIENCY OF THE EVIDENCE
J.B. next contends that the evidence was insufficient to support his adjudication of delinquency.
LSA-Ch.C. Art. 883 provides that in a juvenile case, the State has the burden of proving, beyond a reasonable doubt, that J.B. committed the delinquent act alleged in the petition. State in Interest of J.W., 597 So.2d 1056 (La.App. 2 Cir.1992). The State’s burden of proof in a juvenile ease is no less strenuous than the standard of proof required in an adult criminal proceeding. Id. Moreover, it is well established in the jurisprudence that the due process standard an *406 nounced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), applies in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. State in Interest of Cason, 438 So.2d 1130 (La.App. 2 Cir.1983).
When the issue of sufficiency of evidence is raised at the appellate level, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson, supra. It is the fact finder’s role to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). Therefore, in a case involving a juvenile, when there is evidence presented to the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, the reviewing court should not disturb this factual finding on appellate review in the absence of manifest error. State in Interest of Racine, 433 So.2d 243 (La.App. 1 Cir.), writ denied, 440 So.2d 151 (La.1983).
In the case sub judice, the State had the burden of proving the elements of the crime of sexual battery beyond a reasonable doubt. LSA-R.S. 14:43.1 delineates the elements of the crime of sexual battery as follows:
“A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of | (¡the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim’s age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
C. Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, for not more than ten years.”
J.B. initially asserts that the testimony of the victims without corroborating evidence was insufficient for the State to prove the elements of sexual battery. We disagree.
It is well settled that the testimony of the victims alone is sufficient to prove the elements of an offense. State in Interest of J.L., Jr., 592 So.2d 435 (La.App. 5 Cir.1991), writ denied, 597 So.2d 1031 (La.1992); State in Interest of Wilkerson, 542 So.2d 577 (La. App. 1 Cir.1989); State v. Orgeron, 512 So.2d 467 (La.App. 1 Cir.1987), writ denied 519 So.2d 113 (La.1988).
At the commencement of the adjudication hearing, the State carefully established that at the time of the juvenile court hearing, Diane was six years of age and June was eight years of age, and that they were competent witnesses who knew how important it was for them to testify truthfully about the allegations involving their uncle, J.B.
Diane testified that J.B. molested her when she was four and five years of age. She stated that J.B., who lived with his mother, molested her during times she stayed at her grandmother’s house. She testified that J.B. watched pornographic movies in his bedroom with her and that he would do to her what the people did in the movies.
Diane was specific when she testified about J.B.’s activities with her. She said that J.B. would remove her clothes and underwear and would touch her between her legs, on her “private,” and also touched her “boobies.” Many times J.B. would do these things in |7the bathroom. She stated that J.B. would touch her with his hands and with his “private.” She further said that “white stuff” came out of J.B.’s “private.” She also testi *407 fied that her sister, June, was in the room with her when J.B. took her clothes off.
June’s testimony was less specific than Diane’s. Nevertheless, she testified that J.B. molested her when she was four years of age. She stated that the molestations occurred in J.B.’s bedroom or in the bathroom. Her uncle would touch her in her “private place” a lot and he would touch her with his “private part.” June furthermore corroborated Diane’s testimony about J.B. touching Diane in his bedroom while he imitated actions of persons in the pornographic movie.
When asked why she did not come forward with complaints to her mother, June testified that she was reluctant’ because she was seared of what J.B. might do to her or her sister. Diane and June finally told their mother of J.B.’s actions after their mother found J.B. in the bathroom with Diane. The victims’ mother brought them to the hospital immediately for examination as possible rape victims. Examination at the hospital revealed that neither girl’s vagina had been penetrated.
The victims’ mother gave crucial testimony that J.B. was fourteen to fifteen years of age at the time of the molestations. She stated that when she found J.B. in the bathroom with Diane, the girls became hysterical when she questioned them and that the victims’ grandmother told all of them to leave her house.
Viewing the evidence in the light most favorable to the State, we conclude that the juvenile court could have found beyond a reasonable doubt that J.B. committed sexual battery on the two victims.
Therefore, we find no merit to this assignment of error.
VICTIM RESTITUTION
In his final assignment of error, J.B. contends that the juvenile court erred by ordering him to pay restitution of $10,000 each to Diane and June, and their counseling costs for two years.
J.B. first contends that there is no statutory basis which would authorize the juvenile court to order restitution for non-peeuniary damages.
[gLSA-Ch.C. Art. 897(B)(2)(e) provides in pertinent part:
“The court may impose any other term and condition deemed in the best interests of the child and the public, including:
* * * % * ⅜
(c) A requirement that the child make reasonable restitution to any victim for any personal or property damage caused by the child in the commission of the delinquent act.”
From the outset, we note that the Children’s Code does not provide a definition for the clause “any personal or property damage,” and the jurisprudence has not yet elaborated on this term.
We note that when an adult is placed, on probation, the sentencing court may include as a condition that the defendant “[mjake reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court_” LSA-C.Cr.P. Art. 895(A)(7). Addressing this provision, the Louisiana Supreme Court in State v. Alleman, 439 So.2d 418, 419-20 (La.1983), stated:
“But the sentencing judge is authorized unqualifiedly by statute to require ‘reparation or restitution to the aggrieved party for damage or loss caused by his offense,’ and this is an explicit component of his general authority to impose any specific condition reasonably related to defendant’s rehabilitation. La.C.Cr.P. art. 895(A)(7). There is nothing in this language or in our law which would indicate a legislative intent to limit reparation or restitution to bodily injury or property damage. In the case of torts, for example, the jurisprudence has no difficulty in awarding a pecuniary indemnification for mental suffering, when it appears to be real and serious. Moreover, there is no reason to believe that restitution for such harms is any less reasonably related to rehabilitation than reparation for bodily injury or damage to property.” (Case citations omitted).
Although finding the provisions for restitution not exactly the same, we nonetheless can perceive no reason why we should restrict *408 restitution in the Children’s Code to pecuniary damages. Accordingly, we find in the present case that the juvenile court had statutory authority to order restitution for the victims’ non-pecuniary damages.
J.B. further argues that $10,000 for each victim is not reasonable since he is an unemployed minor who is still in school.
LSA-Ch.C. Art. 893(B) provides in pertinent part:
19“A11 evidence helpful in determining the proper disposition, including ... the report of the predisposition investigation ... and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing....”
In the case sub judice, the predispositional investigation showed that J.B. and his mother receive $4,700 monthly, plus a year-end lump sum payment from an escrow account established as a result of an injury J.B. received when he was approximately two years of age. As detailed in the report, J.B.’s mother estimated that by the time J.B. reaches 80 years of age he will have received approximately $13 million. In light of this evidence, it is clear that the court-ordered restitution is reasonable when this information is considered.
For these same reasons, we likewise find that there is no error in the juvenile court’s additional condition that J.B. pay for the counselling costs which the victims incur during a two-year period.
Therefore, we find no merit to this assignment of error.
DECREE
For the foregoing reasons, J.B.’s adjudication as a delinquent and his sentence are affirmed. Costs of this appeal are assessed to J.B.
AFFIRMED.

. In order to protect the confidentiality of the juvenile, we will refer to him as J.B., his initials. With reference to the two minor victims, we have used fictitious names; Diane is the younger victim, and June is the older victim.

. We further note that J.B. has advanced various arguments which are based on alleged errors in the juvenile court to which he failed to object in the manner prescribed in LSA-C.E. Art. 103. The particular assignments affected are: assignment of error 17 (J.B. failed to contemporaneously object to the juvenile court's exclusion from evidence of alleged hearsay testimony involving Virginia Domingue); assignment of error 13 (J.B. did not timely object to Renee Tucker’s testimony about an incident which occurred after the latest date specified in the bill of information brought against J.B.); assignment of error 14 (failure to object to Detective Dale Conezic's testimony about his attempts to collect a pornographic tape which was allegedly in J.B.'s possession); and, assignment of error 10 (the record shows that no objection was raised to the juvenile court’s continuation of the juvenile hearing past midnight). Therefore, we will not consider these issues, since they are improperly before us.