896 So.2d 349 (2005)
STATE of Louisiana, Appellee
v.
Ty Deon KEMP, Appellant.
No. 39,358-KA.
Court of Appeal of Louisiana, Second Circuit.
March 11, 2005.
*353 Louisiana Appellate Project, by Kenota Pulliam Johnson, for Appellant.
Paul Joseph Carmouche, District Attorney, Tommy Jan Johnson, Ron Christopher Stamps, Assistant District Attorneys, for Appellee.
Before PEATROSS, DREW and LOLLEY, JJ.
LOLLEY, J.
Ty Deon Kemp was convicted of attempted armed robbery and sentenced to 15 years at hard labor without benefits. We affirm the conviction but vacate the sentence and remand for resentencing.

FACTS
At approximately 10:45 p.m. on December 6, 2002, two men broke in a glass door and entered a business named Microfilm Systems, where three female employees were working.
One of the terrified victims, Roxanne Abercrombie, hid and immediately called 9-1-1. She did not emerge from her hiding place until after the robbers left, never getting a good look at them. The other two employees, Virginia Leonard and Tson Troung, were chased through the building by the men. Leonard testified that the intruders wore dark clothing, masks, and gloves. The men pointed at least one gun-like object at Leonard and Troung while demanding money. One grabbed Troung by her neck, dragging her through the office while searching desk drawers for money. The men finally left after being told repeatedly that no money was kept on the premises.
Police responded to the scene within two to four minutes of the police dispatch resulting from the 9-1-1 call.
Sgt. Steven Pierce testified that he:
 witnessed a vehicle leaving Microfilm's parking lot with its headlights off;
 passed the vehicle with "probably less than a foot" between the two cars and saw the two black male passengers; and

*354  turned his car around and chased the vehicle, which crashed into his car.
Officer Robert Elliot arrived shortly before the crash and videotaped the pursuit. He testified that he saw both men clearly, and observed them get out of the wrecked car and run away. Officers Pierce, Elliot, and Yarbrough (who could not testify because of military duty) followed in pursuit but were unable to apprehend the miscreants, who escaped on foot.
Leonard testified that:
 the mask marked Exhibit S-1 looked like the masks the trespassers wore, but she did not remember anything except it had been a dark mask;
 the gun was black and "wasn't a revolver;"
 Exhibit S-2 looked like the gun used that night; and
 the men spoke with foreign accents but in English (the other two victims did not recall any accent).
Troung could not remember what color the masks were and could only testify that the gun was black.
One week after the incident, Sgt. Pierce and Officer Elliot identified the defendant in a photographic lineup as one of the two people pursued by the officers immediately following the attempted robbery. The defense raised questions regarding the validity of the compiled photo lineup, specifically that the defendant's hairstyle was significantly longer than the others pictured. Detective Jeff Brown testified hairstyle was not significant in photo lineups because they "can change so easily."
The car involved in the pursuit belonged to the defendant's girlfriend, Melody Singer. Cpl. Rachal testified about the contents of the car, which included two ski masks, a black toy gun, a knife, a pipe wrench, and electrical tape. A latent palm print and fingerprint matching the defendant's prints were found on the exterior of the door glass on both the driver and passenger sides, though no gloves were found in the car. The pattern of thumbtacks holding the fabric head liner to the roof of the car spelled out "Ty," which is the first name of this defendant.[1]
During Cpl. Rachal's testimony, defense counsel requested a mistrial, predicated upon references to other offenses, which was overruled.
The jury unanimously convicted the defendant of attempted armed robbery. Three months later, the defendant was sentenced to 15 years at hard labor without benefits. A timely motion to reconsider sentence was filed alleging that the trial court pronounced an excessive sentence, and failed to "take into proper consideration the evidence or lack of evidence adduced at trial." The motion was denied.

I. SUFFICIENCY OF THE EVIDENCE

A. Generally
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is *355 armed with a dangerous weapon. La. R.S. 14:64.1.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. It is immaterial whether the person actually accomplished his purpose. La. R.S. 14:27.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.

B. Identification
Defendant argues that it was not proven that he was the robber, and gives these items for consideration:
 Leonard's uncertainty when identifying the mask;
 Leonard's testimony about the suspects speaking in a non-American accent;
 the fact that neither Leonard nor Troung saw the suspects without masks and gloves;
 Troung's testimony that the suspect spoke in a non-American accent;[2]
 Sgt. Pierce's failure to give a more accurate description of the suspects other than that they were two black males;
 the invalidity of the two officers choosing the defendant in a suggestive photo lineup one week after the incident;
 the unreliability of the officers' in-court identification; and
 an innocent explanation as to Kemp's prints being on his girlfriend's car.
The state responds that:
 Sgt. Pierce had excellent lighting available at the scene, where he had a clear view of the driver;
 in fact, the Sergeant had two good looks at the defendant in the vehicle;
 a second officer present at the scene also identified Kemp in a photo lineup;
 his prints were found on and in the car;
 "Ty" was spelled out in thumbtacks in the car's head liner; and
 two ski masks, a pipe wrench, black electrical tape, a knife, and a black toy gun were found in the car.
The clear identification testimony of the two officers, together with the wealth of circumstantial evidence, when considered could reasonably be taken as proof beyond a reasonable doubt that this defendant participated in the robbery.
*356 When a defendant claims that he is not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.

C. Lineup
A lineup is unduly suggestive if the procedure focuses attention on the defendant. State v. Guillot, 353 So.2d 1005 (La.1977). A strict identity of characteristics is not required, but a sufficient resemblance to reasonably test the identification is necessary. Id. Even if the procedure used was suggestive, an identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. State v. Johnson, 33,174 (La.App.2d Cir.5/10/00), 759 So.2d 1052, writ denied, 00-1949 (La.9/21/01), 797 So.2d 60. The factors considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Important evidence of criminality was furnished by the photo lineup as well as the in-court identification of the defendant by Sgt. Pierce and Officer Elliot. One week after the incident, a photo lineup of six possible suspects was shown to both officers. They both unhesitatingly chose the photo marked "4." A review of the lineup photographs shows the defendant's photograph was made from a greater distance and shows more of his shoulders than the others. However, many of the characteristics of those pictured are similar, including skin color and complexion, build, weight, facial hair, and the shape and size of facial features. The photographs had no distinguishing marks. While this photo lineup was certainly not ideal (because of the defendant's hairstyle being longer than the others), the lineup does not appear unduly suggestive. Interestingly, no pre-trial motion to suppress the photo lineup identification was filed. Pierce and Elliot both clearly identified the defendant at trial as being the person involved in the attempted armed robbery after choosing his picture in the photo lineup.
Sgt. Pierce testified he saw two black males leaving Microfilm without headlights on a narrow road near the well-lit post office, and they passed within "probably less than a foot" of the car. He could clearly see both occupants, and he saw the two men again when their car collided with his.
Officer Elliot said that as he turned his car to the right, "... both of the suspects turned and looked at me. I think they feared that I was going to try to hit them with my patrol car actually." The video itself does lack clarity. However, Elliot effectively explained the difference in a human perspective and the filmed footage. He described the camera as "one directional." He further stated that he could see more than the camera captured "because my camera can't turn its head like I can." *357 The suspects were running beside the driver's side of Elliot's patrol car. Both officers have been trained to observe a suspect's appearance and other important details. Furthermore, only a week passed between the incident and the officers' identification of defendant in the photo lineup. The officers' testimony presented no apparent internal contradiction or irreconcilable conflict with the physical evidence. The identification of the defendant by two officers in a photo lineup and subsequently in court was sufficient evidence to negate any reasonable probability of misidentification.
The association of the driver and passenger with this crime was established by the time and location, when and where they were seen by the police, as well as the contents of the car. The two women who saw the suspects while the attempted robbery was in progress were unable to identify them because the men wore masks and gloves, and the third employee never emerged from hiding. Leonard testified the mask found in the car looked like the masks the intruders wore. Both Leonard and Troung remembered seeing a black gun. Leonard identified the "toy gun" found in the car as a gun that looked like the one used that night.

D. Dangerous Weapon
A "dangerous weapon" is defined as any instrumentality which in the manner used is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3). In order to find the toy gun in this case constituted a dangerous weapon, the jury must find that the interaction between the offender and the victim created a highly charged atmosphere whereby there was a danger of serious bodily harm resulting from the victim's fear for his life. State ex rel Richey v. Butler, 572 So.2d 1043 (La.1991); State v. Green, 409 So.2d 563 (La.1982). See also, State v. Cittadino, 628 So.2d 251 (La.App. 5th Cir.1993) (where a victim's belief that a toy pistol pointed at her face was a real gun and that the defendant was going to kill her was sufficient to support a conviction for armed robbery). A lay witness may testify as to opinions rationally based on her perspective. La. C.E. art. 701.
Leonard and Troung testified they thought the men had been armed with a real gun. Leonard said the gun was pointed at her face and that she knew it was not a revolver because there was no cylinder. She agreed with the prosecutor that she felt she was in a violent situation and that she followed orders to remain still because she was afraid of "being shot."
Troung testified she did not remember what the gun looked like other than the color. She said, "I just don't want to look I am so scared." She also stated she had been afraid she was going to be killed because of the (perceived) gun.
Abercrombie testified she could hear Leonard and Troung asking the men not to shoot them and "begging for their life." She stayed hidden because she could hear them, thought the men had a gun, and was too scared to move. When led by the prosecutor, she agreed it had been a hostile, violent environment.
The women believed the gun was real and feared bodily harm or death. They believed they were in danger, and danger invites self-defense and rescue. Under the reasoning of State ex rel Richey v. Butler, supra, and subsequent jurisprudence, therefore:
 victims or witnesses to any robbery, upon observing an apparently life-threatening situation, could attempt to disarm a defendant and rescue the victims;

*358  during such an altercation, death or great bodily harm is likely to occur to someone; and thus
 a toy pistol pointed at a victim in a robbery situation can apparently now be classified as a dangerous weapon, even though
 in the manner used, the toy gun (brandished as a real gun) does not fit into the classical definition of a dangerous weapon, under the clear wording of La. R.S.14:2(13).

E. Other Evidence
The testimony that the men may or may not have spoken in a foreign accent is irrelevant because no evidence was offered at trial that the defendant did or did not speak with an accent. Furthermore, only Leonard stated the men had non-American accents.
The defense validly argues the defendant's finger and palm prints and the name "Ty" spelled out in thumbtacks in the car's head liner might normally be found in a car that belongs to the defendant's girlfriend. This may be true, though this particular car was pursued by police and impounded at the scene of the crime mere moments after the attempted robbery.

F. Conclusion Relative to Sufficiency
The evidence presented in this case is sufficient for conviction. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the state proved, beyond a reasonable doubt, the essential elements necessary to convict the defendant of attempted armed robbery.

MISTRIAL
Defendant argues the testimony of Sgt. Pierce, Det. Brown, and Cpl. Rachal regarding the photo lineup and Automatic Fingerprint Identification (AFIS) system referred to a prior arrest of the defendant, effectively introducing inadmissible other crimes evidence, making a mistrial mandatory under La. C. Cr. P. art. 770 or 775.
The state counters that these explanatory comments did not rise to the level to justify a mistrial, as the trial court did not abuse its discretion. See State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983).
Evidence of a person's character or a trait of his character, such as a moral quality, is generally not admissible for the purpose of proving that he acted in conformity with that character or trait on a particular occasion. La. C.E. art. 404(B.). The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Salter, 31,633 (La.App.2d Cir.2/24/99), 733 So.2d 58, writ denied, 99-0990 (La.9/24/99), 747 So.2d 1114.
Mistrial, a drastic remedy, is warranted only when substantial prejudice would otherwise result to the accused. State v. Cooks, 36,613 (La. App. 2d Cir.12/4/02), 833 So.2d 1034; State v. McGuffey, 486 So.2d 1101 (La.App. 2d Cir.1986); State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983). Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La C. Cr. P. art. 770 or 771. La. C. Cr. P. art. 775. If an irrelevant or immaterial remark that is of such a nature that it might prejudice the defendant is made within the hearing of the jury, the defendant or the state may require that the court admonish the jury to disregard the remark or comment. La. C. Cr. P. art. 771. A mistrial is mandatory when a judge, district attorney or court official *359 refers to inadmissible other crimes evidence in the presence of the jury. La. C. Cr. P. art. 770. For the purposes of La. C. Cr. P. art. 770, a police officer is not a "court official." State v. Carter, 412 So.2d 540 (La.1982); State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La.1992). Factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. State v. Parker, 27,417 (La.App.2d Cir.9/27/95), 661 So.2d 603, writ denied, 95-2576 (La.2/16/96), 667 So.2d 1049; State v. Williams, 26,655 (La.App.2d Cir.3/1/95), 651 So.2d 331, writ denied, 95-0777 (La.9/15/95), 660 So.2d 448. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Williams, supra; State v. Gene, supra.
The trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when the alleged misconduct does not fit into the provisions for mandatory mistrial, and the ruling will not be disturbed on review absent an abuse of discretion. State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992); State v. McGuffey, supra; State v. Johnson, supra. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841.
When Sgt. Pierce was asked by the state what a lineup was, he responded, "Usually it's mug shots. If they have a suspect, like a black male in this case, they will try to find somebody that generally matches his description and put at least like eight photographs together." When asked if the photographs were randomly selected, he answered, "Most detectives I know keep a lot of photographs in their office for lineup purposes, all different kinds of photographs, so they will have them readily available."
Det. Brown testified he "had the AFIS operator construct a six person photographic lineup containing Ty Kemp." He also stated that he asked the crime scene unit to match the defendant's print with a print that was recovered from the car. He later said "he began attempting to locate the suspect Ty Kemp" after he was identified in the photo lineup. The defense did not object to such references to other arrests during the testimony of either of these two officers.
Corporal Rachal provided a detailed lecture on fingerprinting during his testimony. He discussed latent prints and said that when a print cannot be lifted, then he photographs it "using a one to one film" or enters the AFIS system. When asked what AFIS was, he stated it stood for "Automatic Fingerprint System" and talked about the methodology used when "you're booked." He testified Det. Brown asked him to compare a latent print he found on the car with prints of the defendant. He said he was able to match a palm print and fingerprint to the defendant. The defense moved for a mistrial six questions later after Rachal discussed fingerprint classifications, whorls, and ridges. The trial court denied the motion, stating Rachal had discussed procedure and "did not specify it was anyone's print." The court noted the print could have been obtained during the defendant's arrest for the present charge and that Rachal had not indicated to the jury that the defendant had a prior arrest. Rachal testified before Det. Brown testified; therefore, it was entirely possible that the prints used had been from the arrest for this charge. *360 The defendant did not request any admonition or explanation to the jury. Defendant only objected contemporaneously to Rachal's testimony.
The testimony in question was restricted in content to procedure, as the trial court stated in its denial of a mistrial. Rachal did not state that the prints he used to match the defendant to the crime were taken during a prior arrest. Even if he had referenced a prior arrest, the answer would not have been solicited or responsive as the prosecutor asked only questions about fingerprinting procedure commonly used and the meaning of the acronym AFIS. Any reference would have been ambiguous and without explanation or elaboration. Also, Rachal's explanation of procedure could not be construed as purposefully constructed to prejudice the defendant.
Sgt. Pierce never said a mug shot of the defendant had been used in compiling the photo lineup. On the contrary, he said detectives keep "all different kinds of photographs" to compile the lineups. Det. Brown gave the most troubling testimony as he stated a fingerprint was matched and the photo lineup was compiled by the AFIS to include a photo of the defendant before Brown attempted to locate the defendant. It seems apparent by his testimony that the police had the defendant's photograph and fingerprints before his arrest for the current offense. However, no objection was made, and Brown's testimony was not a basis for the denied motion for mistrial that is addressed in this assignment of error. Furthermore, based upon Pierce's and Elliot's testimony about the photo lineup and their in-court identification, the jury could likely still have found the defendant guilty even if Brown had not stated that the photo lineup was compiled before locating the defendant. Therefore, it would have been harmless error.
The comments made during Rachal's testimony did not rise to the level of prejudicial error. No request for an admonition was made. The trial court did not abuse its discretion in denying the motion for mistrial.

ERRORS AT SENTENCING
Defendant argues the trial court imposed an unconstitutionally excessive sentence and failed to comply with La. C. Cr. P. art. 894.1. He claims the court failed to justify the sentence, in that no pre-sentence investigation report was ordered or reviewed prior to sentencing. No reason for the 15-year sentence was given by the trial court. The defendant suggests that we vacate the sentence and remand for resentencing. This argument has merit.
The state argues that the sentence of 15 years at hard labor was not excessive because the defendant "was not a first offender," because of the violent nature of the crime, and the fact that the defendant was single and had a girlfriend was introduced in the record.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years without benefits. La. R.S. 14:64.[3] For attempted armed robbery, the defendant may be sentenced from zero to *361 not more than one-half of that maximum. La. R.S. 14:27.
When a defendant's motion to reconsider sentence urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993). The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. A trial court has broad discretion to sentence within the statutory limits. That sentence should not be set aside absent a showing of manifest abuse of that discretion. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
At sentencing, the trial court made a total of three statements: "The defendant was found guilty on attempted armed robbery by a jury. The matter is before the Court today for sentencing. I am going to sentence you, Mr. Kemp, to fifteen years at hard labor without benefit of parole, probation, or suspension of sentence."
The sentence is within statutory guidelines and does not appear to be grossly disproportionate. However, the trial court failed to address any criteria set forth in La. C. Cr. P. art. 894.1 at sentencing.
There was apparently no pre-sentence investigation ordered to assist the trial court in sentencing. The record shows the defendant was 21 years old and single at the time of the offense. He attempted to commit a crime of violence. He has a prior conviction for illegal possession of stolen things. The motion to reconsider sentence argued that the sentence was excessive, but it only obliquely addressed the court's failure to consider the factors of La. C. Cr. P. art. 894.1. The motion to reconsider was denied without explanation. The state withdrew a habitual offender bill of information immediately before sentencing.[4]
*362 Given the statutory limits, 15 years at hard labor without benefits does not appear to be an excessive sentence. However, the trial court stated absolutely no factual basis for the sentence imposed, nor did it state for the record any agreed sentence between the state and the defendant. The record does not provide an adequate factual basis for the sentence. While we applaud brevity, here the trial court's three simple bare bones statements just don't get it. We are constrained to vacate the sentence, and remand for resentencing. Certainly a pre-sentence investigation report would prove helpful to the court in assessing an appropriate sentence.

SUMMARY
The evidence, when viewed in a light most favorable to the prosecution is sufficient to support the rendered verdict of guilty of attempted armed robbery.
The trial court did not err in denying the motion for mistrial.
The trial court failed to minimally comply with the requirements of La. C. Cr. P. art. 894.1.
The conviction is affirmed, but the sentence is vacated and the matter remanded for resentencing in compliance with La. C. Cr. P. art. 894.1.

DECREE
The conviction is affirmed. The sentence is vacated and the matter is remanded for resentencing.
DREW, J., dissents with written reasons.
DREW, J., dissenting.
With great respect, I must dissent from the learned majority opinion in one respect, as the crime committed here was attempted first degree robbery, not attempted armed robbery.
The language of the jurisprudence relied upon by the majority was forged relative to crimes committed in the days before first degree robbery existed. See State ex rel Richey v. Butler, 572 So.2d 1043 (La.1991); State v. Green, 409 So.2d 563 (La.1982). In reducing an armed robbery to simple robbery, the court in Richey added this footnote:
Since this offense, the Legislature has defined the crime of first degree robbery to punish conduct when the offender leads the victim to reasonable believe he is armed with a dangerous weapon. The penalty for this new crime is imprisonment for not less than three nor more than forty years.
Before 1983, juries and judges had only two robberies for consideration, with drastically different sentencing exposure:
 armed robbery, a mandatory felony carrying from five to 99 years at hard labor, without benefits, or
 simple robbery, a relative felony carrying up to seven years, with or without hard labor.
Now we have four robberies. The fact situation here clearly fits first degree robbery, a violation of La. R.S. 14:64.1., not armed robbery La. R.S. 14:64.
The jurisprudential expansion of what constitutes a dangerous weapon begs these questions:
1. Is there any robbery which is NOT highly-charged, or which lacks the danger of serious bodily harm from the robber's reaction to rescue attempts (particularly in this day of cell phones and 9-1-1)?
*363 2. What victim could ever consider a robbery of any type to be just another day at the office, and a situation completely without fear?
3. If a toy gun (pointed at the victim as if it were a firearm) has now been judicially morphed into a dangerous weapon for purposes of armed robbery, then why did the legislature enact first degree robbery in 1983?
4. Does this continued judicial expansion from the clear statutory definition of dangerous weapon effectively gut first degree robbery so that it can only apply to the finger brandished inside the trench coat as a fake dangerous weapon?
Any robbery is a cruel and horrendous crime. This does not mean that Kemp used a dangerous weapon in the current fact situation. It was a toy gun, and in the manner it was used, nothing can make it anything else.
I find this enlarged interpretation of the definition of dangerous weapon incompatible with the clear definition of dangerous weapon found in La. R.S. 14:2(3). Hopefully, the Louisiana Supreme Court or our legislature will reexamine and clarify this issue. The broadening language utilized in Richey, supra, and Green, supra, (two fake weapon cases where the crimes occurred years prior to the 1983 enactment of La. R.S. 14:64.1.) is still being utilized, resulting in effectively transforming the crime of first degree robbery into armed robbery. See Cittadino, supra.
My civics teacher taught me that the legislature makes the law and the courts interpret the law. Here, we disregard this basic maxim. Accordingly, I respectfully dissent from this portion of the otherwise excellent majority opinion.
NOTES
[1] Many would say, in retrospect, that this was a poor choice in a getaway vehicle, particularly for a defendant named "Ty."
[2] This is in error, as Truong never testified that the robbers spoke in accents.
[3] Additional sentencing exposure would have occurred, had the state also charged the defendant with violation of La. R.S. 14:64.3, which is a five-year enhancement in a situation, as here, where a firearm was utilized in an armed robbery. The penalty for a defendant convicted of attempted armed robbery, in violation of La. R.S. 14:64, 27, and 64.3, would have resulted in an additional 2.5 years of sentencing exposure, totaling 52 years (49.5 + 2.5). Since La. R.S. 14:64.3 was not utilized, the maximum exposure here is 49.5 years.
[4] This sounds like a sentencing agreement reached in chambers; i.e., in exchange for the state dropping the habitual offender proceeding, the defendant would get 15 years (30% of his maximum exposure). Such an agreement would explain the trial court's terse comments at sentencing. However, the record does not reflect this.