938 So.2d 1158 (2006)
STATE of Louisiana, Appellee
v.
Montgomery David MALHIOT, Appellant.
No. 41,175-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
Louisiana Appellate Project, by Christopher Albert Aberle, Mandeville, Mary Lee Harried, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Lea R. Hall, Jr., Brian H. Barber, Ron Christopher Stamps, Assistant District Attorneys, for Appellee.
Before BROWN, DREW and LOLLEY, JJ.
DREW, J.
Montgomery David Malhiot was convicted at jury trial for the crime of attempted armed robbery. Sentenced to 15 years at hard labor without benefit of parole, probation, or suspension of sentence, he now appeals. We affirm.

FACTS
On or about September 6, 2004, the defendant, a heroin addict, was in a gambling mood, so he took a bus from Texas to a Shreveport area casino, packing some heroin and a lot of bad luck.[1]
Upon his arrival in Shreveport, the defendant:
 quickly lost at the casinos whatever money he had on him;
 unsuccessfully sought to secure a motel room;[2]
 desperately sought lodging at a Salvation Army shelter; and
 greedily consumed all his heroin, waking up quite ill.
A shelter employee kindly drove the defendant to the LSU medical center. The defendant checked into the hospital, but after several hours of waiting, left, heading to a nearby liquor store, where he asked for a bottle of rum. Things started to run off into the ditch, as this chronology unfolded:

*1160  Feeling an intense craving for some relief, the defendant opened the bottle at the sales counter before the transaction was completed by the store owner, Mr. Mohammed.
 The owner grabbed the bottle and explained that it was illegal to open alcohol in the store.
 The defendant became angry, put Mr. Mohammed in a headlock, doused him with rum, then threatened to set him on fire if he did not give him some money.
 A struggle ensued, and Mr. Mohammed yelled to his brother, who was in the back office, to get a gun and call 911.
 The "gun" his brother retrieved and slid out to Mr. Mohammed was actually a BB gun.[3]
 The store owner gained control of the BB gun, and held it on the defendant, who was sprawled on the floor in a bad way.
The defendant was charged with armed robbery, to which he pled not guilty. On May 12, 2005, a petit jury convicted him of the responsive verdict of attempted armed robbery. On August 19, 2005, the trial court denied the defendant's motions for new trial and post verdict judgment of acquittal. On August 29, 2005, the court sentenced the defendant to 15 years at hard labor, mistakenly believing that the benefits of parole, probation, and suspension of sentence were available to the defendant. On September 2, 2005, pursuant to the state's Motion to Correct an Illegal Sentence, the court resentenced Malhiot to 15 years without benefit of parole, probation, or suspension of sentence. At the resentencing proceedings, the defense noted their objection to the granting of the state's motion to resentence.

DISCUSSION
Sufficiency of Evidence
The defendant's arguments on sufficiency are as follows:
 The State failed to prove beyond a reasonable doubt that the rum that was splashed on the store owner was a "dangerous weapon" as required by La. R.S. 14:64, for the reason that (unlike acid or other caustic substances) rum, by itself, is not a dangerous weapon.
 Gasoline is extremely flammable, but rum is not, further reasoning that no bar would stock rum if it actually was extremely flammable.
 At the time of the incident, he had no lighter, nor any matches.
 The trial court, during sentencing, expressed doubt that the defendant knew there were matches on the counter.
 Therefore, at most, he could only be guilty of attempted first degree robbery, not armed robbery, as he was not armed with a dangerous weapon.
The state argues that the verdict is proper because:
 the defendant doused the victim with highly-flammable rum, placed the victim in a headlock, and threatened to ignite the rum if the victim did not comply with his demand for money;
 even with no lighter and no matches on his person, there were lighters for sale in the immediate area;
 the victim was severely frightened of being burned, due to the fact that he was not aware that the defendant did not possess any means of ignition;

*1161  this threat of being burned created a highly-charged environment of fear;[4]
 rum, by itself, can be considered a dangerous weapon based on the fact that even a toy gun has been found to be a dangerous weapon when presented as a "real" gun;[5]
 therefore, any rational trier of fact could have found that rum plus the threat of being ignited is a "dangerous weapon" consistent with the statute.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court is controlled by the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
To convict a defendant of attempted armed robbery, the state must prove that the defendant, having the specific intent to commit armed robbery, did or omitted an act for the purpose of and tending directly toward the taking of anything of value belonging to another, from the person of another or in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:27 and 64. State v. Musgrove, 33,977 (La.App. 2d Cir.12/15/00), 774 So.2d 1155, writ denied, XXXX-XXXX (La.9/28/01), 798 So.2d 112.
A "dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
The supreme court has also held that "the term `dangerous weapon' is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality which in the manner used, is calculated or likely to produce death or great bodily harm." State v. Bonier, 367 So.2d 824, 826 (La.1979). See R.S. 14:2(3). Louisiana jurisprudence reveals that numerous everyday items have been held to constitute a dangerous weapon, in the manner used, including:
 a stick, State v. McClure, 34,880 (La. App. 2d Cir.8/22/01), 793 So.2d 454;
 an ink pen, State v. Johnson, 598 So.2d 1152 (La.App. 1st Cir.1992); and
 a tennis shoe, State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991).
This record clearly reflects that there was sufficient evidence for a trier of fact to find that all of the required elements were present by which to prove that a dangerous weapon had been used, considering:
 a person was doused with Bacardi 151 rum, a liquid known to have a high alcohol content, accompanied by
 the threat of being ignited, along with
 the availability of a lighter within arm's reach.
We agree with the state. Considering the violent and senseless environment created by the defendant, there is no doubt *1162 that taking the rum and the threats together constituted ample evidence by which to sustain this conviction of attempted armed robbery.
Sentencing
The defendant argues that at the original sentencing hearing, the trial court believed that the penalty for attempted armed robbery was subject to a condition of parole. On the state's motion, the trial court corrected the sentence to include the denial of all benefits (parole, probation, suspension of sentence).
The defendant further argues that the trial court could have done more than correct the sentence but may have thought it was limited to that specific matter. In light of the brevity of the proceedings, the defendant argues the trial court could not have taken into consideration whether a lower sentence would serve the court's original sentencing intent without a full hearing.
The state disagrees, because the defendant:
 only orally objected to the correction of the illegal sentence;
 failed to file a motion to reconsider sentence, limiting any review of the defendant's sentence to constitutional excessiveness only;
 was exposed to 491/2 years at hard labor without the benefit of probation, parole, or suspension of sentence, and received a much lighter sentence than the maximum;
 had the benefit of the trial court clearly reviewing the facts and circumstance of this case and this defendant before sentence.
Defense counsel, at the hearing for the state's Motion to Correct an Illegal Sentence, stated, "We would note for the record objection to the granting of the State's motion and objection to the resentencing of Mr. Malhiot for the record." The trial court subsequently corrected the defendant's sentence to 15 years at hard labor to be served without benefit of parole, probation, or suspension of sentence, with credit for time served.
The trial court considered the defendant's criminal history, drug addiction, rehabilitation efforts, a PSI report, the defendant's family, a letter written by the defendant's father, and the relevant facts of the case. The trial court acknowledged that the defendant created a dangerous situation, but given the circumstances, a maximum punishment was not necessary. In fact, during the original sentencing hearing, the trial court stated:
I do not believe that [the offense] carries with it the provision that, whatever the term the Court orders must be served without benefit of probation, parole, or suspension of sentence. I did advise the district attorney and the defense lawyer here at the bench that if we find out that's different, notify me by way of a motion to reconsider, and I will correct any issue that needs to be corrected.

Emphasis added.
Defendant's actual objection to his resentencing contested the procedure used to resentence, not the length of the sentence or the denial of benefits. We note that the original sentence would have been corrected, had the trial court not done so, because the failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefits does not affect the statutory requirement that all or a portion of the sentence be served without benefits.[6]
*1163 The defendant cites State v. Everett, 2005-214 (La.App. 3d Cir.11/2/05), 916 So.2d 1210, 1213, where that court remanded for resentencing an attempted possession of a firearm offense and stated that, "had [the trial court] known that the entire term of imprisonment must be served without benefit of parole, the trial court may have imposed a lesser term of imprisonment for the Defendant."
The instant case is distinguishable from State v. Everett, supra, because in the case at bar, the trial court considered all the mitigating factors at the original sentencing hearing, the trial court had the opportunity to review the sentence at the resentencing hearing, and nothing in the record reflects the trial court's desire to impose a lesser sentence in light of the restriction on benefits. The resentencing was proper.

DECREE
Defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Somewhere in these facts may lurk a possible country-western song.
[2] Presumably by barter, since he'd had a bad night at the dice halls.
[3] Nowhere near enough firepower for Shreveport, Louisiana.
[4] In support of this counterargument, the state goes back over a quarter century ago, citing State v. Bonier, 367 So.2d 824 (La. 1979), which held that, while it is not determinative of the issue, the subjective reaction of the victim may be some evidence of whether there was an actual likelihood of danger.
[5] See State v. Kemp, 39,358 (La.App. 2d Cir.3/11/05), 896 So.2d 349 (Drew, dissenting), writ denied, XXXX-XXXX (La.12/9/05), 916 So.2d 1052.
[6] La. R.S. 15:301.1(A) provides:

When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole or suspension of sentence, each sentence imposed under that statute shall be deemed to contain the provisions relating to the service of that sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefits shall not affect the statutory requirement that all or a portion of the sentence be served without benefits.