MAX N. TOBIAS, JR., Judge.
| ,The appellant, K.J., was adjudicated a delinquent child[1] for violation of La. R.S. 14:34, relative to the aggravated battery of F.B.[2] At the conclusion of the adjudication hearing held on 30 November 2010, K.J. was found to be delinquent for the crime of aggravated battery. That same day, the juvenile judge placed K.J. with the Office of Juvenile Justice (“OJJ”) for a period of time not to exceed one year. The execution of the sentence was suspended and K.J. was placed on active probation under the supervision of the OJJ for one year. The trial court also ordered K.J. to complete 100 hours of community service, to write a 500-word essay for the court, enroll in an anger management program, and to pay $600.00 in restitution to the victim. K.J. appeals his adjudication as a delinquent child on the grounds that the evidence is insufficient to support a finding beyond a reasonable doubt that he committed the delinquent act; he also appeals the disposition ordering him to pay $600 in restitution to the victim in the absence of evidence substantiating any pecuniary loss.
Because we conclude from a review of the facts and the law that the juvenile | ¡judge was not clearly wrong in finding beyond a reasonable doubt that K.J. committed the delinquent act, we determine that the evidence is sufficient for the adjudication. We also conclude that the juvenile court was within its authority to order K. J. to pay restitution to the victim for her non-pecuniary losses associated with the battery, but that the record in this case does not support an order of restitution for pecuniary losses she may have sustained. Accordingly, we affirm the adjudication of delinquency, conditionally affirm the order of restitution for non-pecuniary losses, and remand the matter to the trial court with instructions to clarify the restitution ordered.
SUFFICIENCY OF THE EVIDENCE
In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. In a delinquency-adjudication proceeding, the state must prove all essential elements of the delinquent act beyond a reasonable doubt. La. Ch.C. art. 883; In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Also in a juvenile case, the reviewing court is constitutionally compelled to review both the facts and law. La. Const, art. V, § 10(A) and (B). However, the reviewing court must recognize the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine the credibility and weigh the evidence.
*559 In Louisiana, the child is constitutionally entitled to appellate review of his adjudication under the manifestly erroneous-clearly wrong standard. See La. Const, art. V, §§ 5, 10, 18, and 19; see also State in the Interest of D.R., 10-0405, pp. 6-9 (La. App. 4 Cir. 10/13/10), 50 So.3d 927, 930-932. This is a broader standard than the minimum standard mandated by the federal constitution and memorialized in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[3] See also, State in the Interest of D.R., 10-0405, pp. 12-13, 50 So.3d at 934.
The manifest error-clearly wrong standard is well-known. Nolan v. Mabray, 10-373, pp. 9-10 (La.11/30/10), 51 So.3d 665, 672. A factfinder’s findings are not disturbed, if, after a review of the entire record, we conclude that the findings are reasonable and not clearly wrong. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Especially on matters of credibility, an appellate court affords great deference to a factfinder’s findings. Id. If, however, “documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face,” we might well find manifest error despite a purported credibility determination by the factfinder. Id. at 845.
In this case, we specifically note that the only objective evidence introduced at trial over the objection of defense counsel consisted of photographs of the victim taken by the crime lab in the emergency room following her injury. These photographs are not contained in the record on appeal. Additionally, the judge as trier of fact accepted as credible the testimony of the state’s witnesses: the victim, F.B.; her mother, B.B.; and the investigating officer, Detective Clinton Givens. J^Thus, our review is primarily directed to determining whether there is sufficient evidence as to each essential element of the delinquent act charged and to determine whether the testimony of the witnesses is internally inconsistent or implausible on its face.
K.J. was charged with and adjudicated delinquent for committing an aggravated battery, a violation of La. R.S. 14:34, which defines aggravated battery as “a battery committed with a dangerous weapon.” La. R.S. 14:33 defines battery, in part, as “the intentional use of force or violence upon the person of another[.]” Pursuant to La. R.S. 14:2(3), “[d]angerous weapon” includes any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. The term “dangerous weapon” is not limited to those instrumentalities that are inherently dangerous, but also includes any instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm. See State v. Malhiot, 41,175, p. 4 (La.App. 3 Cir. 8/23/06), 938 So.2d 1158, 1161. In Louisiana, numerous everyday items have been held to constitute a dangerous weapon, in the manner used, including a stick. Id.
In the instant case, in order to convict K.J. of the crime charged, the juve *560 nile court was required to find beyond a reasonable doubt that K.J.: (1) intentionally used force or violence upon F.B.’s person; (2) with a dangerous weapon; (3) which weapon, in the manner used, was calculated or likely to produce death or great | ¡/bodily harm. State v. Wix, 02-1493, p. 9 (La.App. 4 Cir. 1/15/03), 838 So.2d 41, 47.
Keeping these legal precepts in mind, we turn now to a review of the facts in this case, as well as the applicable law for the offense for which K.J. was adjudicated, and apply the proper standard of review.
On 28 August 2010, at approximately 9:30 p.m., Detective Clinton Givens received a dispatch call regarding a battery. Givens testified that, after receiving the call, he went to the victim’s home located on Hickerson Street in Orleans Parish to investigate the complaint. According to Givens, he spoke to the victim, F.B., and other adult members of her family. While there, Givens observed a laceration over F.B.’s eye. He called EMS for emergency assistance. Givens then went to question the defendant, K.J., at his home. Additionally, Givens canvassed the area in search of the alleged weapon, a metal pipe, to no avail. After meeting with K.J. and his mother, Givens arrested K.J. for battering F.B. with a pipe.
F.B. testified at the adjudication hearing that on the night in question, she walked out of her house on Hickerson Street and observed her brother and K.J. “fussing” in the street. She noticed K.J. backing up from her brother and then fleeing in the direction of his own home two blocks away. Thereafter, F.B., her brother, nephew, and two of their friends went searching for K.J. They found him around the corner standing inside of his own fenced yard. K.J. then began arguing with one of the boys, M. K.J.’s mother came out onto the porch, briefly spoke to K.J., and returned inside the house.
|f,One of F.B.’s companions, P., advised F.B. not to proceed any further to KJ.’s home. Heeding P.’s advice, F.B. and her seven-year-old nephew began walking back to her home in one direction down Marque Street, while her brother and the remainder of her friends walked away in the other direction down Grant Street. According to F.B., as she was walking away from KJ.’s residence and towards her own home, K.J. approached her from behind and struck her on the back with a metal pipe or stick. F.B. testified that she turned around, pushed K.J. and they struggled over the pipe. K.J. eventually gained control over the pipe and then he hit her on the head with it.
F.B.’s mother, B.B., also testified at the adjudication hearing. Ms. B. stated that F.B. was transported to Tulane Medical Center where she received treatment for the injuries sustained during the altercation, including six stitches to mend the laceration to her head. Ms. B. identified several photographs of F.B.’s injuries taken by the crime lab while she was in the hospital, which were admitted into evidence over defense counsel’s objection. No documentation or paperwork from the hospital corroborating F.B.’s injuries or treatment was presented at trial.
K.J. was the sole witness for the defense. He stated that he was skateboarding in front of his house with a friend when F.B. and five others came down the street towards him. According to K.J., three of the boys from the group were holding two-by-fours and F.B. was carrying a wooden stick. K.J. testified that one of the boys named M. approached him, acting as if he was going to shake K.J.’s hand, but instead, hit K.J. with a piece of glass and then ran off.
*561 17According to K.J., his mother came outside onto their porch with the intention of talking to M., but he had walked away. She instructed K.J. to go talk to the other kids. His mother then returned inside the house and proceeded to get into her car so that she could go tell the boys to leave. According to K.J., once his mother got into her car, M. and the three bigger boys ran away, but F.B. remained standing there with a little boy. K.J. claims that he then went towards F.B., who was approximately two blocks away, and attempted to take the stick she was holding away from her. A struggle ensued. K.J. testified that he was able to gain control of the stick, however, F.B. would not stop grabbing his shirt and hitting him. K.J. admitted to hitting F.B. on one occasion behind her head, but only because she continued to hit him in the face. K.J. believed that had he not taken the stick away from F.B., she would have struck him with it. K. J. denies ever having seen a metal pipe.
The record clearly reflects that sufficient evidence existed for the trial court to find that all of the required elements were presented to prove that a dangerous weapon had been used and an injury had occurred, considering that K.J. admitted to intentionally approaching F.B. and striking her behind her head with a stick or pipe with such force that she sustained a serious injury to her face. Because of the severity of the laceration, F.B. was forced to seek medical treatment and received six stitches to mend the cut. At the close of the evidence, the trial judge iterated her findings as follows:
After hearing the statements from the witnesses as well as Counsel for the State and Counsel for the Defense, the IsCourt finds that [K.J.] is guilty of aggravated battery against [F.B.]. The Court finds that [K.J.] did most certainly use, I’ll read the statute, force, intentional force, you went behind her, your [sic] hit her in the back. There were five boys. You testified that yourself. You went after one girl. So that’s pretty pathetic I must say, that’s number one. Number two, the young lady testified that she was standing at the corner, that you were behind your fence, and you also testified that they also had 2 by 4’s and you went after her to take a stick. So how ever a 2 by 4 became a stick, a pipe, or what ever [sic] you used an object that was dangerous and that could have caused her great bodily harm. You’re very fortunate that the only thing that happened was that she had a laceration to her forehead. You could have caused a concussion or anything else. So for that you should be punished.
In addition to that, she stated that she was standing on the corner, that you were behind the gate, your mother got into the car, you had the opportunity to stay in your house, you had the opportunity to get in the car with your mother. You testified that five boys went in another direction and that she was standing on the corner with a little boy and you attacked her. You attacked her from behind when she turned around you were not trying to get a stick from her [K.J.], I do not believe your testimony. When she turned around you struck her in the head and you intended to hurt her, okay. So we find you adjudicated delinquent of the charge of aggravated battery.
Applying the relevant standard of review to these facts and the reasonable inferences that may be made therefrom, and according great deference to the trial court’s credibility determinations and assessment of the witness’ testimony, we conclude that the juvenile judge was not clearly wrong in finding beyond a reason *562 able doubt that K.J. committed an aggravated battery upon F.B. and that K.J. is delinquent. We, therefore, conclude that there is sufficient evidence to affirm the finding of delinquency.
J^YICTIM RESTITUTION
In his next assignment of error, K.J. contends the juvenile court erred by ordering him to pay restitution in the amount of $600.00 to the victim in the absence of corroborating medical evidence. K.J. contends there is no statutory basis authorizing a juvenile court to order restitution for non-pecuniary damages.[4]
La. Ch.C.art. 897 B(2)(c) provides, in pertinent part:
(2) The court may impose any other term and condition deemed in the best interests of the child and the public, including:
[[Image here]]
(c) A requirement that the child make reasonable restitution to any victim of any personal or property damage caused by the child in the commission of the delinquent act.
From the outset, we note that the Children’s Code does not provide definitions for the terms “reasonable restitution” or “any personal or property damage,” and our jurisprudence has not yet elaborated upon these terms in relation to juvenile matters. Accordingly, we look to the Code of Criminal Procedure for guidance. See La. Ch.C. art. 104(1).[5]
Pursuant to La.C.Cr.P. art. 895 A, when a court suspends the imposition or execution of a sentence, as in the instant case, it may impose any specific condition reasonably related to the defendant’s rehabilitation. Additionally, the sentencing judge is expressly authorized to require the condition of “restitution to the aggrieved party for damage or loss caused by his offense in an amount to be | ^determined by the court.” La.C.Cr.P. art. 895 A(7). See State v. Alleman, 439 So.2d 418, 419 (La.1983).
In Alternan, the defendant, who was convicted of making three obscene phone calls and was ordered, as a condition of probation, to pay restitution to the victims in the amount of $500 each, argued that a sentencing judge may not impose the condition of restitution except for a tangible or actual physical loss, as opposed to the mental anguish, apprehension, and annoyance suffered by a defendant’s victims. In affirming the restitution ordered, the Supreme Court, relying on the express language of La.C.Cr.P. art. 895 A(7), stated:
But the sentencing judge is authorized unqualifiedly by statute to require “reparation or restitution to the aggrieved party for damage or loss caused by his offense,” and this is an explicit component of his general authority to impose any specific condition reasonably related the defendant’s rehabilitation. La. C.Cr.P. art. 895(A)(7). There is nothing in this language or in our law which would indicate a legislative intent to limit reparation or restitution to bodily injury or property damage. In the case of torts, for example, the jurisprudence has no difficulty in awarding a pecuniary indemnification for mental suffering, *563 when it appears to be real and serious. Moreover, there is no reason to believe that restitution for such harms is any more reasonably related to rehabilitation than reparation for bodily injury or damage to property. (Case citations omitted).
While we recognize the potential danger of what arguably amounts to an award of civil damages in a criminal proceeding, we are constrained by the legislative provisions contained in La.C.Cr.P. art. 895 A(7) and the Supreme Court’s decision in Alleman, to find that in cases where evidence of bodily injury or property damage to the victim has not been quantifiably established, as long as Inthe amount of restitution ordered is reasonable and is reasonably related to the defendant’s rehabilitation, the sentencing judge in the judge’s discretion may properly order restitution for non-pecuniary damages to the victim.[6]
La.C.Cr.P. art. 895.1 A mandates a court, when the victim has suffered any “monetary loss or medical expense,” to order payment of restitution, as a condition of probation, “in a reasonable sum not to exceed the actual pecuniary loss to the victim.” Further, La.C.Cr.P. art. 895.1 B(5) authorizes the court to order payment “to the victim to compensate him for his loss and inconvenience,” which amount may be in addition to the amounts ordered under Article 895.1 A. See State v. Diaz, 615 So.2d 1336, 1337 (La.1993).
In Diaz, the defendant was convicted of second degree battery. The sentencing judge ordered, as a condition of probation, “full and complete restitution ... for any loss, injury or damage sustained by the victim.... ” The judge further ordered that “restitution is to be made in the amount that he may be found civilly liable for in an amount sufficient to compensate the victim for the loss, injury or damage.” Diaz, 615 So.2d at 1337.[7] The sentencing judge, apparently preferring to await the outcome of a companion pending civil suit, did not set an amount certain for restitution as required by La.C.Cr.P. art. 895 A(7), nor did the judge set forth a method of payment based upon the earning capacity and assets of the defendant as required by La.C.Cr.P. art. 895.1 A(l). Because the defendant failed to properly raise the sentencing defects on appeal, the court of appeal did not review the restitution aspect of the defendant’s sentence. State v. Diaz, 612 So.2d at 1024, n. 1. The Supreme Court, however, in a per curiam opinion, addressed the sentencing judge’s order of restitution and, specifically referring to La.C.Cr.P. arts. 895.1 A and B, stated that “[tjhese articles focus primarily[8] on restitution for pecuniary losses caused by the criminal activity and not on providing criminal sanctions to enforce collection of civil damages (including non-pecuniary damages).” [Emphasis supplied.] While the Supreme Court did not specifically strike or otherwise vacate the sentencing judge’s restitution order, it did direct that on “resentencing the judge *564 should determine a specific (or determinable) reasonable amount of restitution and should order payment ‘either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.’ ” Diaz, 615 So.2d at 1337.
Our reading of the Supreme Court’s decision in Diaz[9] and its application of La.C.Cr.P. arts. 895.1 A(l) and B(5), leads us to the conclusion that in a criminal case where the evidence establishes the victim has suffered a direct loss of actual cash, monetary loss due to physical damage to or loss of property, and/or incurred medical expenses, the sentencing judge must order restitution in an amount not to exceed the actual loss sustained or medical expense incurred by the victim as established at trial. The court may further order payment of an additional amount to the victim for any quantifiable loss or inconvenience (ie. costs of rental car, cabs, medical equipment, etc.) suffered as a result of the criminal activity for which the defendant was convicted.
[isln the case at bar sub judice, when sentencing K.J., the juvenile judge ordered K.J. to pay, as a condition of probation, “$600.00 in restitution, $100.00 for each stitch that she had to get when she was put into the hospital.” In issuing this order, the judge stated that “[K.J.] needs to do some type of community service to pay restitution. So I don’t know how we’re going to do this but he’s going to pay $600.00 in restitution to this family, to this little girl in actuality. I don’t care if he has to pay $10.00 a week.” In the context of the record, the trial judge was arguably ordering K. J. to pay restitution for a pecuniary loss; however, the record contains no evidence, ie., medical invoices, substantiating that F.B. sustained any pecuniary loss.
Based upon our review of the record, it is unclear whether the juvenile judge intended to order K.J. to pay restitution to F.B. for any non-pecuniary losses she suffered as a result of being hit in the head with a pipe, or if the order for K.J. to pay restitution was for pecuniary losses relating to the actual cost of the stitches F.B. received when K.J. struck her in the head with the pipe.[10] If the order for K.J. to pay restitution was intended for F.B.’s non-pecuniary losses, we find that La. Ch.C. art. 897 B(2)(c) and La.C.Cr.P. art 895 A(7), together with the Supreme Court’s decision in Alleman, provide the requisite authority for the juvenile judge to order restitution for these damages and we would affirm the sentence ordering restitution.[11] The amount ordered is reasonable ($100 per stitch), and is reasonably related to K. J.’s rehabilitation.
114If, on the other hand, the judge’s order for K.J. to pay restitution was for the actual pecuniary losses suffered by F.B. as a result of the battery, we find the record does not support such an order, and it *565 should, accordingly, be stricken. The record is devoid of evidence regarding any specific or quantifiable monetary losses or medical expenses incurred by F.B. relative to the medical treatment she received following the incident as is required by La. C.Cr.P. art. 895.1 A(l). Further, the record contains no proof of any additional pecuniary losses or inconvenience suffered by F.B. that would support an order of restitution under La.C.Cr.P. art. 895.1 B(5).
Accordingly, we remand this matter to the juvenile court seeking clarification regarding the nature of the restitution ordered. Assuming the trial judge ordered K.J. to pay $600.00 restitution to F.B. for any non-pecuniary losses she may have suffered as a result of the battery, we hereby conditionally affirm the order for the reasons previously stated. To the extent the trial judge ordered K.J. to pay restitution to F.B. in the amount of $600.00 for the pecuniary losses, i e. medical expenses, she incurred due to the battery, we vacate that portion of the sentence on the basis that it is not supported by the record on appeal.
Additionally, in the event the restitution ordered by the trial court was for F.B.’s non-pecuniary losses, we note the trial judge failed to set a specific payment schedule by which K.J. is to make restitution to F.B. The Children’s Code does not provide for a method of payment so, again, we look to the provisions of the Criminal Code. La. Ch.C. art. 104. According to La.C.Cr.P. art. 895.1 A, the restitution payment shall be made, within the discretion of the court, either in a | lfllump sum or in monthly installments based on the earning capacity and assets of the defendant. Here, the trial judge’s ruling on payment of restitution does not comply with this provision. This court has found a trial court’s failure to set a determinate payment schedule for restitution payments-is an error requiring the case to be remanded for purposes of specifying how the payments should be made. See State v. Stewart, 605 So.2d 648, 650 (La.App. 4th Cir. 1992). Therefore, we remand the matter to the trial court for purposes of determining the method of restitution. See State v. McGee, p. 7 (La.App. 5 Cir. 10/28/08), 996 So.2d 1191, 1195.
CONCLUSION
For the foregoing reasons, the disposition finding K.J. delinquent is affirmed. We conditionally affirm the order of restitution for K.J. to pay F.B. for her non-pecuniary losses associated with the battery and remand the matter to the juvenile court with instructions seeking clarification regarding the nature of the restitution ordered (ie., for non-pecuniary losses or pecuniary losses); if, on remand, it is determined restitution was ordered to pay for the victim’s pecuniary losses, the restitution order is vacated for the reasons previously stated. If, on remand, it is confirmed that restitution was ordered to compensate the victim for her non-pecuniary losses, the trial court is instructed to determine the method of restitution.
AFFIRMED IN PART, CONDITIONALLY AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.

. See La. Ch.C. art. 804(1) and (3).

. To protect the identities of the juveniles and their families involved in this case, we refer to the defendant, the victim, and others by their initials throughout this opinion.

. The Jackson sufficiency-of-evidence standard is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” Jackson, 443 U.S. at 310, 99 S.Ct. 2781. This standard tests the evidence against a hypothetical rational trier of fact; all evidence, whether admissible or not, is considered. See State v. Jackson, 09-2406, p. 3 (La. 1/19/11), 55 So.3d 767, 771-72 ("To the extent that Jackson announced an objective standard for reviewing the sufficiency of the evidence from the perspective of a hypothetical rational, pro-prosecution trier of fact, the decision ‘does not require scrutiny of the reasoning process actually used by the factfin-der — if known.’ ”) (quoting Jackson, 443 U.S. at 319, n. 13, 99 S.Ct. 2781).

. "Non-pecuniary” damages are defined as "[d]amages that cannot be measured in money.” Black’s Law Dictionary 418 (8th ed.2004). In contrast, "pecuniary” damages are generally defined as those "that can be estimated and monetarily compensated.” Id.

. La. Ch.C. art. 104(1) provides that "[w]here procedures are not provided in this Code, or otherwise by law, die court shall proceed in accordance with: (1) The Code of Criminal Procedure in a delinquency proceeding....”

. We note that the dissenting judges in Alle-man were also concerned with "the concept of awarding civil damages in a criminal proceeding.” Alleman, 439 So.2d at 420.

. According to the court of appeal opinion in State v. Diaz, 612 So.2d 1019 (La.App. 2 Cir. 1993), the victim suffered a double fracture of his jaw requiring a five-hour reparative surgery to wire the fractured bone together and immobilization for seven weeks. At the time of the criminal trial and sentencing, a companion civil suit for monetary damages was pending.

.We specifically note the Supreme Court’s choice of the word "primarily” rather than stating that these articles focus "solely” or "only” on pecuniary damages.

. We note that in the Diaz case, the Supreme Court did not mention its prior decision of Alleman or discuss La.C.Cr.P. art. 895 A(7).

. Given the current costs of medical care, the medical expense incurred as a result of the emergency medical treatment and six stitches to the forehead F.B. received likely exceeded $600.00.

. See State v. J.B., 94-213 (La.App. 3 Cir. 10/5/94), 643 So.2d 402, wherein a juvenile adjudicated delinquent for committing sexual battery on two victims was ordered to pay restitution of $10,000.00 to each victim and their counseling costs for two years. In response to the defendant’s argument on appeal that there was no statutory basis authorizing the juvenile court to order restitution for non-pecuniary damages, our brethren on the Third Circuit disagreed and affirmed the award, finding authority in La. Ch.C. art. 897 B(2)(c), La.C.Cr.P. art. 895 A(7), and, the Supreme Court’s decision in State v. Alleman, 439 So.2d 418 (La.1983).